**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

IN RE:

HOMEMAKERS REAL ESTATE, LLC,

     Debtor.

_____/

          **CASE NO.: 6:26-bk-01776-GER**

          **CHAPTER 7**

**EMERGENCY MOTION OF MAINSTREET COMMUNITY BANK OF FLORIDA FOR ENTRY OF AN ORDER (I) CONFIRMING THAT NO AUTOMATIC STAY EXISTS OR THAT PRIOR STAY RELIEF REMAINS EFFECTIVE, OR ALTERNATIVELY (II) GRANTING RELIEF FROM STAY PURSUANT TO 11 U.S.C. §§ 362(d)(1), (d)(2), AND (d)(4), INCLUDING *IN REM* RELIEF, <u>WAIVER OF RULE 4001(a)(3), AND REQUEST FOR EMERGENCY HEARING</u>**

Mainstreet Community Bank of Florida ("Mainstreet"), by and through undersigned counsel, files this Emergency Motion for Entry of an Order (I) Confirming that No Automatic Stay Exists or that Prior Stay Relief Remains Effective, or Alternatively (II) Granting Relief from Stay Pursuant to 11 U.S.C. §§ 362(d)(1), (d)(2), and (d)(4), Including In Rem Relief, Waiver of Rule 4001(a)(3), and Request for Emergency Hearing (the "Motion"), and states:

<u>**Preliminary Statement**</u>

This case represents yet another chapter in an ongoing pattern of serial bankruptcy filings, transfers of interests, shifting ownership structures, and procedural maneuvering designed to obstruct Mainstreet's lawful foreclosure remedies. The Bankruptcy Code was not designed to function as a revolving injunction against secured creditors every time state court proceedings advance toward judgment, yet that is precisely what has occurred here.

Mainstreet has already been required to litigate stay relief in a prior involuntary Chapter 11 proceeding involving the same debtor and the same collateral. The Court granted Mainstreet relief from stay in that case. Foreclosure proceedings resumed in state court. Now, following

additional bankruptcy filings and continuing procedural maneuvering, Mainstreet is once again forced to return to this Court merely to confirm its ability to continue exercising rights that were already previously adjudicated.

The record demonstrates a continuing scheme to hinder, and delay secured creditors through serial bankruptcy filings affecting the same collateral, coupled with transfers and restructuring efforts involving the debtor and related parties. Accordingly, Mainstreet seeks an order confirming that no stay presently exists or, alternatively, granting immediate stay relief — including *in rem* relief under 11 U.S.C. § 362(d)(4) so that no future bankruptcy filing affecting the subject property will again impede Mainstreet's foreclosure remedies for the next two years.

### Jurisdiction and Venue

1.      This Court has jurisdiction pursuant to 28 U.S.C. §§ 157 and 1334.

2.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3.      This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(G).

### Mainstreet's Loan and Collateral Position

4.      Mainstreet is a secured creditor with interests in certain property located in Brevard County, Florida (the "Property") described in the below-described Loan Documents.

5.      On or about March 24, 2023, Debtor executed and delivered to Mainstreet that certain Renewal Promissory Note in the original principal amount of $3,765,363.00 (the "Loan 4380371 Note"). A true and correct copy of the Loan 4380371 Note is attached as **Exhibit "A."**

6.      To secure the amounts due under the Loan 4380371 Note, Debtor executed and delivered to Mainstreet that certain Mortgage recorded February 23, 2022, in Official Records Book 9424, Page 471, Public Records of Brevard County, Florida (the "Loan 4380371 Mortgage"), pursuant to which Debtor granted Mainstreet a first priority lien and security interest in the

collateral described therein (the "Loan 4380371 Property"). A true and correct copy of the Loan 4380371 Mortgage is attached hereto as **Exhibit "B."**

7. On March 24, 2023, Debtor executed and delivered to Mainstreet that certain Mortgage Modification Agreement recorded March 30, 2023, in Official Records Book 9750, Page 1972, Public Records of Brevard County, Florida (the "Loan 4380371 Mortgage Modification"). A true and correct copy of the Loan 4380371 Mortgage Modification is attached as **Exhibit "C."**

8. To further secure the indebtedness, Horton S. Johnson, individually, and Horton S. Johnson, as Trustee of the Horton S. Johnson Revocable Trust dated August 3, 2012, executed Absolute and Continuing Guaranties in favor of Mainstreet.

9. Mainstreet owns and holds the original Loan 4380371 Note, Loan 4380371 Mortgage, Loan 4380371 Mortgage Modification, and related guaranties (collectively, the "Loan 4380371 Documents").

10. Prior to the bankruptcy filings, Mainstreet accelerated the indebtedness and initiated foreclosure proceedings styled *MAINSTREET COMMUNITY BANK OF FLORIDA v. HOMEMAKERS REAL ESTATE, LLC, et al.*, in the Eighteenth Judicial Circuit in and for Brevard County, Florida, Case No. 05-2025-CA-027661-XXCA-BC (the "Foreclosure Action"). Mainstreet recorded a Lis Pendens concerning the Property in the Foreclosure Action.

11. On or about June 13, 2023, Debtor also executed and delivered to Mainstreet that certain Promissory Note in the original principal amount of $735,000.00 (the "Loan 4383834 Note"). A true and correct copy of the Loan 4383834 Note is attached hereto as **Exhibit "D."**

12. To secure the Loan 4383834 Note, Debtor executed and delivered to Mainstreet that certain Mortgage Deed and Security Agreement recorded June 16, 2023, in Official Records

Book 9816, Page 77, Public Records of Brevard County, Florida (the "Loan 4383834 Mortgage"), encumbering additional related collateral. A true and correct copy of the Loan 4383834 Mortgage is attached hereto as **Exhibit "E."**

13. Horton S. Johnson, individually and as Trustee, also executed guaranties concerning the Loan 4383834 obligations.

14. Mainstreet owns and holds the Loan 4383834 Note, Mortgage, and related guaranties (collectively, the "Loan 4383834 Documents").

15. In connection with Loan 4380371, Debtor executed an Assignment of Leases and Rents dated February 17, 2022 and recorded February 23, 2022 at Official Records Book 9424, Page 490, Public Records of Brevard County, Florida. The Loan 4383834 Mortgage likewise assigns rents and revenues to Mainstreet upon default.

16. Debtor remains in default under the Loan Documents, and Mainstreet is entitled to all leases, rents, revenues, and proceeds generated by the Property. Mainstreet has not received rents from the Property since the foreclosure proceedings and bankruptcy filings commenced.

17. Mainstreet's interests are not adequately protected, and Mainstreet continues to suffer erosion of its collateral position.

### Bankruptcy Filing History and Continuing Scheme to Delay Creditors

18. On May 5, 2025, Homemakers Real Estate, LLC filed a voluntary Chapter 11- *In re Homemakers Real Estate, LLC*, Case No. 6:25-bk-02685-GER, which case was dismissed on June 27, 2025.

19. Thereafter, on September 2, 2025, an involuntary Chapter 11 proceeding was filed against Homemakers Real Estate, LLC styled as: *In re Homemakers Real Estate, LLC*, Case No. 6:25-bk-05570-GER. Mainstreet was forced to seek stay relief in the Involuntary Case.

20.     On April 24, 2026, this Court entered an Order granting Mainstreet relief from stay and authorizing Mainstreet to the Foreclosure Action.

21.     Thereafter, on March 13, 2026, the Debtor filed the instant petition, at least the third bankruptcy proceeding affecting the Property. The procedural history reflects a continuing pattern whereby bankruptcy filings arise whenever foreclosure proceedings advance. The Debtor and related parties have repeatedly engaged in transfers, assignments, restructuring efforts, and shifting ownership arrangements involving the collateral and related interests. The cumulative effect of these actions has been to hinder, delay, and frustrate secured creditors, including Mainstreet.

22.     Mainstreet reasonably believes that absent entry of a binding *in rem* order, additional bankruptcy filings affecting the Property are likely to occur.

### Emergency Certification

23.     Mainstreet respectfully requests expedited consideration of this Motion because ongoing uncertainty concerning the applicability and scope of the automatic stay continues to materially prejudice Mainstreet's ability to prosecute the pending Foreclosure Action.

24.     Mainstreet has already obtained stay relief in prior proceedings involving the same Property and same Debtor, yet successive and overlapping bankruptcy filings continue to impede enforcement efforts and increase costs, delay, and prejudice to Mainstreet.

25.     Immediate consideration of this Motion is necessary to prevent further irreparable delay and continuing abuse of the bankruptcy process.

### MEMORANDUM OF LAW

**I.      CAUSE EXISTS TO CONFIRM THAT NO STAY EXISTS OR THAT PRIOR STAY RELIEF REMAINS EFFECTIVE.**

26.     Mainstreet submits that, under the unique procedural circumstances presented here, no automatic stay presently exists as to Mainstreet's foreclosure remedies or, alternatively, that the previously entered stay relief order in the Involuntary Case remains operative and enforceable.

27. Multiple bankruptcy cases affecting the same debtor and collateral have been pending within the preceding year.

28. Another secured creditor has already sought confirmation from this Court that no automatic stay remains in effect pursuant to 11 U.S.C. § 362(c)(3). *See* Motion filed by Tamamoi, LLC, at Docket No.: 19. Additionally, this Court already granted Mainstreet stay relief in the Involuntary Case authorizing continuation of the foreclosure proceedings and rents remedies in state court.

## II. ALTERNATIVELY, CAUSE EXISTS FOR RELIEF FROM STAY UNDER § 362(d)(1).

29. Section 362(d)(1) permits relief from stay for "cause." "Cause" under § 362(d)(1) is a broad and flexible concept determined on a case-by-case basis. *In re Big Dog II, LLC*, 602 B.R. 64, 69 (Bankr. N.D. Fla. 2019); *see also In re Dixie Broad., Inc.*, 871 F.2d 1023, 1026 (11th Cir. 1989) (finding lack of adequate protection as "cause").

30. Bankruptcy courts routinely find cause for stay relief where serial bankruptcy filings are used primarily to delay foreclosure proceedings rather than pursue legitimate bankruptcy objectives. *In re Albany Partners, Ltd.*, 749 F.2d 670, 674 (11th Cir. 1984) (analyzing bad faith factors in the context of a motion to dismiss); *In re Phoenix Piccadilly, Ltd.*, 849 F.2d 1393, 1394 (11th Cir. 1988) (identifying bad faith filing as "cause" for stay relief).

31. Cause plainly exists here as Mainstreet's collateral position continues to erode, and Mainstreet is not receiving rents or adequate protection payments.

32. The Debtor and related parties have repeatedly invoked bankruptcy protection while foreclosure proceedings continue to advance.

33. The Bankruptcy Code was intended to provide honest debtors with relief, not to permit repeated filings designed to frustrate secured creditors indefinitely. "Several courts have held that when a bankruptcy case has been filed only for the purpose of inhibiting or forestalling a

foreclosure action on the debtor's assets and without the intention of financial rehabilitation, the case should be dismissed as having been filed in bad faith. *See, e.g., In re McKissie*, 103 B.R. 189, 192 (Bankr. N.D. Ill. 1989). Cause therefore exists for immediate stay relief in the instant case.

**III.     RELIEF IS ALSO WARRANTED UNDER § 362(d)(2).**

34.     Relief from stay is also warranted pursuant to § 362(d)(2).

35.     Upon information and belief, the Debtor lacks equity in the Property.

36.     Additionally, the Property is not necessary to an effective reorganization because this is a Chapter 7 liquidation proceeding. Property cannot be "necessary to an effective reorganization" in a Chapter 7 liquidation because no reorganization is contemplated. *In re Diplomat Elecs. Corp.*, 82 B.R. 688, 693 (Bankr. S.D.N.Y. 1988). Accordingly, relief is appropriate under § 362(d)(2).

**IV.     *IN REM* RELIEF IS WARRANTED UNDER § 362(d)(4).**

37.     Section 362(d)(4) authorizes *in rem* relief where the Court finds that the bankruptcy filing was part of a scheme to delay, hinder, or defraud creditors involving either:

(a)     transfer of interests in the property without consent of the secured creditor or court approval; or

(b)     multiple bankruptcy filings affecting the property.

38.     Section 362(d)(4) is intended to prevent creditors from being forced into an endless cycle of repeated stay litigation every time a new bankruptcy filing or transfer affecting the collateral occurs.

39.     Courts will grant *in rem* relief where the record demonstrates repeated filings affecting the same property and a pattern of conduct designed to hinder and delay secured creditors. *In re Lee*, 467 B.R. 906, 920 (B.A.P. 6th Cir. 2012).

40. Section 362(d)(4) was enacted specifically to address schemes involving serial bankruptcy filings and transfers of interests intended to frustrate secured creditors' foreclosure remedies. *In re Muhaimin*, 343 B.R. 159, 168-69 (Bankr. D. Md. 2006).

41. The facts here satisfy both statutory grounds as this matter involves:

   a. serial bankruptcy filings;
   b. overlapping bankruptcy proceedings;
   c. repeated interference with foreclosure efforts;
   d. transfers and assignments affecting the collateral and related interests;
   e. restructuring maneuvers involving ownership and membership interests; and,
   f. continuing efforts to impede Mainstreet's enforcement remedies.

42. This Court should not permit the automatic stay to become a revolving procedural shield through which foreclosure proceedings are perpetually interrupted. The Bankruptcy Code exists to protect legitimate reorganization efforts — not to facilitate endless procedural delay while secured creditors are repeatedly forced back into bankruptcy court to relitigate rights already adjudicated.

43. The cumulative procedural history demonstrates a continuing scheme to hinder and delay secured creditors. The automatic stay should not be abused through multiple bankruptcy filings intended to delay valid foreclosure proceedings. *See In re Kinney*, 51 B.R. 840, 844-45 (Bankr. C.D. Cal. 1985).

44. Absent *in rem* relief, Mainstreet reasonably fears that additional bankruptcy filings, transfers, assignments, or restructuring maneuvers will continue to be employed to obstruct foreclosure remedies. *In rem* relief is therefore necessary and appropriate.

## V. RULE 4001(a)(3) SHOULD BE WAIVED.

45. Mainstreet has already endured substantial delays arising from successive bankruptcy proceedings and repeated stay-related litigation.

46. Further delay would substantially prejudice Mainstreet and unnecessarily interfere with the pending state court Foreclosure Action and rents proceedings. Immediate effectiveness of any order entered by this Court is therefore warranted.

**WHEREFORE,** Mainstreet Community Bank of Florida respectfully requests that this Court enter an Order:

     A.     Confirming that no automatic stay presently exists as to Mainstreet's foreclosure and related remedies, or alternatively confirming that Mainstreet's previously obtained stay relief remains effective;

     B.     Alternatively granting Mainstreet relief from stay pursuant to 11 U.S.C. §§ 362(d)(1), (d)(2), and (d)(4);

     C.     Granting Mainstreet in rem relief pursuant to 11 U.S.C. § 362(d)(4), including a determination that:

          (i)     the filing of the present bankruptcy case was part of a scheme to delay, hinder, and frustrate secured creditors involving multiple bankruptcy filings and transfers affecting the Property; and

          (ii)     any future bankruptcy filing affecting the Property during the ensuing two-year period shall not operate to stay Mainstreet's foreclosure proceedings, assignment of rents remedies, foreclosure sale proceedings, or related state court enforcement remedies;

     D.     Authorizing Mainstreet to continue all foreclosure-related remedies in state court, including foreclosure proceedings, summary judgment proceedings, assignment of rents remedies, receivership remedies, foreclosure sale proceedings, writs, execution remedies, and all related enforcement remedies;

     E.     Waiving Bankruptcy Rule 4001(a)(3);

     F.     Directing that the Order be immediately effective upon entry; and,

     G.     Granting such other and further relief as the Court deems just and proper.

     **DATED** this 19th day of May 2026.

 

/s/ Justin M. Luna
**Justin M. Luna, Esq.**
Florida Bar No. 0037131
jluna@lathamluna.com
L. William Porter III
Fla. Bar No. 0116882
bporter@lathamluma.com
**LATHAM, LUNA, EDEN & BEAUDINE, LLP**
201 S. Orange Ave., Suite 1400
P. O. Box 3353 (Orlando, FL  32802-3353)
Orlando, Florida 32802-3353
Telephone:  407-481-5800
Facsimile:  407-481-5801
Secondary e-mail: bknotice1@lathamluna.com
*Attorneys for Mainstreet Community Bank of Florida*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been filed provided

to the following by either CM/ECF or U.S. Mail on May 19, 2026:

| | |
|---|---|
| Lindsey Savastano, Esq.<br>McMichael Taylor Gray, LLC<br>3550 Engineering Drive, Suite 260<br>Peachtree Corners, GA 30092 | Homemakers Real Estate, LLC<br>10226 Curry Ford Rd.<br>Suite 107 PMB1036<br>Orlando, FL 32825 |
| Matthew Leibert, Esq.<br>Urban Thier & Federer, P.A.<br>5782A S. Semoran<br>Orlando, FL 32822 | Homemakers Real Estate, LLC<br>2875 S. Orange Ave<br>Suite 500 #6409<br>Orlando, FL 32806 |
| Arvind Mahendru<br>5703 Red Bug Lake Rd. #284<br>Winter Springs, FL 32708 | Homemakers Real Estate, LLC<br>202 Ivory Coral Lane Unit 206<br>Merritt Island, FL 32953 |
| United States Trustee - ORL 7 /13<br>Office of the United States Trustee<br>400 West Washington Street, Suite 1100<br>Orlando, FL 32801 | Homemakers Real Estate, LLC<br>202 Ivory Coral Lane Unit 303<br>Merritt Island, FL 32953 |
| Homemakers Real Estate, LLC<br>202 Ivory Coral Lane Unit 205<br>Merritt Island, FL 32953 | Homemakers Real Estate, LLC<br>202 Ivory Coral Lane Unit 402<br>Merritt Island, FL 32953 |
| Homemakers Real Estate, LLC<br>202 Ivory Coral Lane Unit 503<br>Merritt Island, FL 32953 | Homemakers Real Estate, LLC<br>202 Ivory Coral Lane Unit 404<br>Merritt Island, FL 32953 |
| Homemakers Real Estate, LLC<br>202 Ivory Coral Lane Unit 504<br>Merritt Island, FL 32953 | Homemakers Real Estate, LLC<br>202 Ivory Coral Lane  Unit 505<br>Merritt Island, FL 32953 |

/s/ Justin M. Luna
**Justin M. Luna, Esq.**

10

# EXHIBIT A

Prepared by:
Robert D. Wilson
Wilson & Williams PA
954 E Silver Springs Blvd
Ocala FL 34470

## RENEWAL PROMISSORY NOTE

$3,765,363.00                                                                    March 24, 2023

FOR VALUE RECEIVED, the undersigned, **HOMEMAKERS REAL ESTATE, LLC, a Florida limited liability company** (hereinafter referred to as the "Borrower"), promises to pay to **Mainstreet Community Bank of Florida** (hereinafter referred to as the "Lender"), in the manner hereinafter specified, the principal sum of Three Million Seven Hundred Sixty Five Thousand Three Hundred Sixty-Three and 00/100 Dollars ($3,765,363.00), or as much thereof as may be advanced by Lender from time to time, with interest from date at the per annum rate of Seven percent (7.0%). The said principal and interest shall be payable in lawful money of the United States of America at 204 S. Woodland Blvd., DeLand, Florida 32720 or at such place as may hereafter be designated by written notice from the Lender to the Borrower, on the dates and in the manner following:

a. Beginning thirty days from the date of this renewal note, and continuing the same day of each month thereafter, this Note shall be repaid in monthly installments of principal and interest in the amount of $29,192.82 commencing the 24th day of April, 2023 and continuing on the same day of each month thereafter until March 24, 2028 (the "Maturity Date").

b. All unpaid principal and interest shall be due and payable on the Maturity Date.

Interest shall be calculated on the basis of a 360-day year for the actual number of days principal is unpaid.

**THIS LOAN IS PAYABLE IN FULL ON THE 24th DAY OF MARCH, 2028. AT MATURITY YOU MUST REPAY THE ENTIRE PRINCIPAL BALANCE OF THE LOAN AND UNPAID INTEREST THEN DUE. THE LENDER IS UNDER NO OBLIGATION TO REFINANCE THE LOAN AT THAT TIME. YOU WILL THEREFORE BE REQUIRED TO MAKE PAYMENT OUT OF OTHER ASSETS YOU MAY OWN, OR YOU WILL HAVE TO FIND A LENDER WILLING TO LEND YOU THE MONEY. IF YOU REFINANCE THIS LOAN AT MATURITY, YOU MAY HAVE TO PAY SOME OR ALL OF THE CLOSING COSTS NORMALLY ASSOCIATED WITH ANY NEW LOAN EVEN IF YOU OBTAIN REFINANCING FROM THE SAME LENDER.**

**Annual Debt Service Recapture Covenant.** Borrower agrees and covenants that it will apportion thirty percent (30.0%) of its annual cash flow earnings above its annual debt to the Lender as a principal reduction payment on the outstanding balance of the Loan (each annual payment referred to as the "Principal Recapture"). The Principal Recapture will be calculated and paid to Lender in accordance with Article 2.5 of a certain loan agreement between Borrower and Lender of even date herewith ("Loan Agreement"), which by reference is incorporated herein.

**Legal Interest Rate.** All terms, conditions and agreements herein are expressly limited so that in no contingency or event whatsoever, whether by reason of advancement of the proceeds hereof, acceleration of maturity of the unpaid principal balance hereof, or otherwise, shall the amount paid or agreed to be paid to the Lender hereof for the use, forbearance, or detention of the money to be advanced hereunder exceed the highest lawful rate permissible under applicable laws. If, from any circumstances whatsoever, fulfillment of any provision hereof shall involve transcending the limit of validity prescribed by law which a court of competent jurisdiction may deem applicable hereto, then ipso facto, the obligation to be fulfilled shall be reduced to the limit of such validity, and if under any circumstances the Lender hereof shall ever receive as interest an amount which would exceed the highest lawful rate, such amount which would be excessive interest shall be applied to the reduction of the unpaid principal balance due hereunder and not to the payment of interest.

**Capital Loan.** This Note is secured by a certain Mortgage and Security Agreement of dated April 29, 2016, which encumbers certain real estate and fixtures situated in Alachua County, Florida (herein sometimes referred to as the "Mortgage"), as modified by Mortgage Modification and Collateral Spreading Agreement of even date herewith, and is further secured by other Loan Documents, identified in the Loan Agreement, which Loan Documents and Loan Agreement are incorporated herein by this reference.

**Due On Sale.** Any sale, conveyance, or transfer effecting (a) a change in ownership of the Property; or (b) a change in ownership or control of Borrower shall accelerate the remaining balance of the Note which shall be immediately due and payable without demand or notice.

**Financial Reporting.** Borrower, and any Guarantor, shall furnish Lender such financial information concerning the Borrower, Mortgaged Property (as defined in the Mortgage) or any Guarantor as Lender may reasonably request from time to time all in a form satisfactory to Lender. Lender may require that financial statements be CPA Reviewed, Compiled and/or Certified. Annual financial statements and tax returns of Borrower and any Guarantor shall be delivered to Lender within 90 days following a request of the same by Lender. Borrower and any Guarantor shall furnish to Lender copies of any extensions to file tax returns. In the event the aforementioned documents are not provided to Lender within the time provided herein, the interest rate provided in this Note, may, at Lender's option, increase to the default rate of interest of eighteen percent (18%) for so long as Borrower or any Guarantor do not comply with this Paragraph, including any other remedies available to Lender for an event of default.

**Banking Relationship.** Borrower agrees to maintain a depository relationship with Lender during the term of this Note, and failure to do so shall constitute a default.

**Secondary Financing.** Any secondary financing secured by the real or personal property described in the Mortgage and Security Agreement executed on even date herewith, which secures this Note, without the prior consent of Lender shall be a default.

**Cross Default.** Borrower has now or may hereinafter have obligations to Lender under other notes or credit facilities (collectively referred to as "Other Notes"). A default in the Other Notes is a default herein and a default herein is a default in the Other Notes.

**Acceleration.** If default be made in the payment of any of the sums or interest mentioned herein, or in the Mortgage, or any guaranty of this Note, or the Loan Documents, or in the performance of any of the agreements contained herein or in said Mortgage, or Loan Documents, then the entire principal sum and accrued interest shall, at the option of Lender, become at once due and collectible without notice, time being of the essence; and said principal sum and accrued interest shall both bear interest from such time until paid at the "Default Rate" as hereinafter defined. Failure to exercise this option shall not constitute a waiver of the right to exercise the same.

2

In the event of any subsequent default. For purposes of this Note the "Default Rate" shall mean the lesser of eighteen percent (18%) per annum, or the highest rate permitted by appropriate law. The Default Rate shall apply automatically after maturity of this Note, whether by acceleration or otherwise.

Set-off. Lender is hereby given a lien upon and security interest in all property of Borrower (each of them if more than one) now or at any time hereafter in the possession of Lender in any capacity including but not limited to any balance or share of any deposit, trust, or agent account, as security for the payment of this Note and Lender shall, upon any default of Borrower hereunder, have the remedies of a secured party as to the same under the Florida Uniform Commercial Code. Lender is hereby authorized and shall have the right, immediately and without further action by it, to set-off against this Note, any deposit accounts of Borrower (or any or all of them if more than one), as well as any money, instrument, securities, documents, chattel paper, credits, claims, demand, income and any other property rights and interests of any Borrower which at the time shall come into the possession or custody or under the control of Lender or any of its agents, affiliates or correspondents.

Severability. The parties hereto intend and believe that each provision in this Note comports with all applicable local, state, and federal laws and judicial decisions. However, if any provisions, provision, or portion of any provision in this Note is found by a court of competent jurisdiction to be in violation of any applicable local, state or federal ordinance, statute, law, or administrative or judicial decision, or public policy, and if such court would declare such portion, provision or provisions of this Note to be illegal, invalid, unlawful, void or unenforceable as written, then it is the intent of all parties hereto that such portion, provision or provisions shall be given force and effect to the fullest possible extent that they are legal, valid and enforceable, and that the remainder of this Note shall be construed as if such illegal, invalid, unlawful, void or unenforceable portion, provision or provisions were severable and not contained therein, and that the rights, obligations and interest of the Borrower and the Lender under the remainder of this Note shall continue in full force and effect.

Waivers, Attorney's Fees and Costs. Each person liable hereunder whether Borrower or Guarantor, hereby waives presentment, protest, notice, notice of protest and notice of dishonor and agrees to pay all costs, including a reasonable attorney's fee, whether suit be brought or not, and whether at trial or on appeal, if, after maturity of this Note or default hereunder, counsel shall be employed to collect this Note.

Renewal. The taking of a renewal note without the signature of any Borrower or endorser liable on this Note shall not be deemed a payment or discharge of this obligation and the liability created hereunder shall continue until this Note is paid in full.

Late Charge. The Lender may collect a late charge not to exceed an amount equal to five percent (5%) of any installment of principal or interest which is not paid within ten (10) days of the due date thereof, to cover the extra expense involved in handling delinquent payments, provided that collection of said late charge shall not be deemed a waiver by the Lender of any of its rights under this Note. No past or future waiver of any late charge or charges shall preclude or restrict Lender's right to impose such late charge.

3

**Waiver of Jury Trial.** BORROWER AND LENDER HEREBY KNOWINGLY, VOLUNTARILY, AND INTENTIONALLY WAIVE THE RIGHT EITHER MAY HAVE TO A TRIAL BY JURY IN RESPECT OF ANY LITIGATION BASED HEREON OR ARISING OUT OF, UNDER OR IN CONNECTION WITH THIS NOTE AND ANY AGREEMENT CONTEMPLATED TO BE EXECUTED IN CONJUNCTION HEREWITH, OR COURSE OF CONDUCT, COURSE OF DEALING, STATEMENTS (WHETHER VERBAL OR WRITTEN) OR ACTIONS OF EITHER PARTY. THIS PROVISION IS A MATERIAL INDUCEMENT FOR LENDER ENTERING INTO THIS NOTE.

**Legal Review.** The undersigned has read this Note and understands its content. The representative executing this Note on behalf of the Borrower is empowered to do so and thereby binds the company. The Borrower acknowledges that it has had an opportunity to consult with legal counsel in the formulation and execution of this Note.

**Joint and Several Liability.** All the parties executing this Note or otherwise becoming liable for the debt and obligations evidenced herein shall be, jointly and severally, obligated hereunder and in furtherance agree that no release, compromise, indulgence, extension, renewal, non-exercise of right or remedy, suit, or collection effort, whether against one, some or all of such liable parties shall release, reduce or affect in any way the liability or indebtedness of any other such liable party.

**Terminology.** Whenever used herein, the terms "Borrower", "Guarantor", and "Lender" shall be construed in the singular or plural as the context may require or admit.

**Applicable Law.** This Note is to be construed according to the laws of the State of Florida.

**Captions.** Captions and headings in this Note are for convenience only and shall not be relied upon in construing the meaning of this Note or any of its provisions.

*Signatures on the following page(s).*

4

DATED, this 24ᵗʰ day of March, 2023.

HOMEMAKERS REAL ESTATE, LLC
a Florida limited liability company

BY: _Horton S. Johnson_____
    Horton S. Johnson, Manager

STATE OF FLORIDA
COUNTY OF _Brevard_

The foregoing instrument was acknowledged before me by physical presence on this 24th day of March 2023, by Horton S. Johnson, as Manager of HOMEMAKERS REAL ESTATE, LLC, a Florida limited liability company, who is (✓) personally known to me or ( ) who has produced _____ as identification and who executed on behalf of himself and the limited liability company.

Notary Seal/Stamp

_Janie S Tank_
Notary Public

Notary Public State of Florida
Janie S Tank
My Commission GG 917074
Expires 01/09/2024

5

# EXHIBIT B

CFN 2022046429, OR BK 9424   Page 471, Recorded 02/23/2022 at 03:35 PM Rachel M. Sadoff, Clerk of Courts, Brevard County   Doc M: $17714.90 Int. Tax: $10122.73

19/16



This Instrument Prepared By/Return to:
W. James Gooding III
Gooding & Batsel, PLLC
1531 SE 36th Avenue
Ocala, FL 34471

Recording costs - $163.—
Documentary Excise Tax - $17,714.90
Intangible Taxes - $10,122.73

## MORTGAGE DEED AND SECURITY AGREEMENT

THIS MORTGAGE DEED (the "Mortgage") dated February 17, 2022, by and between Homemakers Real Estate, LLC, a Florida limited liability company, whose address is 522 South Hunt Club Blvd, #228, Apopka, FL 32703 (hereinafter called "Mortgagor"), and Mainstreet Community Bank of Florida, whose address is 112 North Magnolia Avenue, Ocala, FL 34475 (hereinafter called "Mortgagee");

NOW, THEREFORE, in consideration of the loan evidenced by the promissory note referred to hereafter, and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Mortgagor agrees as follows:

1.    **Grant of Mortgage.**

1.1.    This Mortgage is given in order to secure the payment of both the principal and interest and any other sums payable on the promissory note of even date herewith in the original principal amount of Five Million, Sixty-One Thousand, Three Hundred Sixty-Three Dollars and 00/100 ($5,061,363.00) from Mortgagor to Mortgagee together with all renewals of, extensions of, modifications of, refinancings of, consolidations of, and substitutions for the promissory note (collectively, the "Note") or this Mortgage, and the performance and observance of all of the provisions hereof and of the Note.

1.2.    Mortgagor hereby grants, sells, warrants, conveys, assigns, transfers, mortgages and sets over and confirms unto Mortgagee all of Mortgagor's estate, right, title and interest in, to and under the following (collectively, the "Mortgaged Property"):

1.2.1.    All that certain real property (the "Real Property") situate in Brevard County, Florida, more particularly described as follows:

See attached **Exhibit A**

1.2.2.    All improvements now or hereafter located on the Real Property.

1.2.3.    All fixtures, appliances, apparatus, equipment, furnishings, heating and air conditioning equipment, machinery and articles of personal property and replacement thereof (other than those owned by lessees of the Real Property) now or hereafter affixed to, attached to, placed upon, or used in any way in connection with the complete and comfortable use, occupancy, or operation of the Real Property.

05-2025-CA-027661-XXCA-BC

OR BK  9424  PG  472

1.2.4.  All licenses and permits used or required in connection with the use of the Real Property; all leases of the Real Property now or hereafter entered into; and all right, title and interest of Mortgagor thereunder, including without limitation, cash or securities deposited thereunder pursuant to such leases; all easements, rights of way, and appurtenances; and all rents, issues, proceeds, profits, revenues, royalties, rights, accounts, accounts receivable and benefits arising from, relating to or accruing from the Real Property; and together with all proceeds of the conversion, voluntary or involuntary, of any of the foregoing into cash or liquidated claims, including without limitation, proceeds of insurance and condemnation awards.

1.2.5.  All and singular the tenements, hereditaments and appurtenances thereunto belonging or in anywise appertaining and the reversion and reversions thereof; and all the estate, right, title, interest, homestead, dower and right of dower, separate estate, possession, claim and demand whatsoever, as well in law as in equity, of Mortgagor and unto the same, and every part thereof, with the appurtenances of Mortgagor in and to the same, and every part and parcel thereof unto Mortgagee.

1.3.  This Mortgage Deed shall be deemed to be a security agreement under the Florida Uniform Commercial Code in respect to all personal property and material brought upon the Mortgaged Property to be incorporated in, attached to, or used upon the Mortgaged Property. Mortgagor hereby grants a security interest to Mortgagee in and to such property and any and all other property described in and by this Mortgage Deed to be the full extent permitted by the Florida Uniform Commercial Code. Mortgagor covenants that Mortgagor will do or join with Mortgagee in doing all further things necessary to create, perfect and preserve such security interest. Mortgagor will not suffer or permit any other security interest to exist in respect to such property. Mortgagor shall keep such property in Mortgagor's possession and will not permit such property to be removed from the Mortgaged Property. The Mortgagee shall have all rights and remedies in respect to such property as is provided in the Florida Uniform Commercial Code. All of the terms, provisions and conditions of this Mortgage Deed shall be applicable to such property prior to and after incorporation in or attachment to the real property hereinabove described.

1.4.  Mortgagor warrants that Mortgagor has a good and marketable title to an indefeasible fee estate in the Real Property comprising the Mortgaged Property subject to no lien, charge or encumbrance, except such as Mortgagee has agreed to accept in writing or as set forth in the legal description of the Real Property contained in this Mortgage or in any title insurance policy accepted by Mortgagee in connection with this Mortgage; and Mortgagor covenants that this Mortgage is and will remain a valid and enforceable mortgage on the Mortgaged Property subject only to the exceptions herein provided. Mortgagor has full power and lawful authority to mortgage the Mortgaged Property in the manner and form herein done or intended hereafter to be done. Mortgagor will preserve such title and will forever warrant and defend the same to Mortgagee and will forever warrant and defend the validity and priority of the lien hereof against the claims of all persons and parties whomsoever.

1.5.  Mortgagor will, at the cost of Mortgagor and without expense to Mortgagee, do, execute, acknowledge and deliver all and every such further acts, deeds, conveyances, mortgages, assignments, notices of assignment, transfers and assurances as Mortgagee shall from time to time require in order to preserve the priority of the lien of this Mortgage or to facilitate the performance of the terms hereof.

05-2025-CA-027661-XXCA-BC

OR BK   9424   PG   473

1.6.    If Mortgagor shall pay to Mortgagee the Note together with all other sums advanced by Mortgagee to or on behalf of Mortgagor pursuant to the Note or this Mortgage, as specified in the Note and shall perform all other covenants and conditions of the Note and of this Mortgage, then this Mortgage and the estate hereby created shall cease and terminate.

2.    **Payment of Note.** Mortgagor shall pay all sums, including interest, secured hereby, when due, as provided for in the Note and any renewal, extension or modification thereof and in this Mortgage; all such sums to be payable in lawful money of the United States of America at Mortgagee's aforesaid principal office or at such other place as Mortgagee may designate in writing.

3.    **Payment of Taxes and Claims.** Mortgagor shall:

3.1.    Pay when due and without requiring any notice from Mortgagee, all taxes, assessments of any type or nature, and other charges levied or assessed against the Mortgaged Property or this Mortgage and produce receipts therefor upon demand.

3.2.    Pay and discharge any claim, lien or encumbrance against the Mortgaged Property, which may be or become superior to this Mortgage.

3.3.    Permit no default or delinquency on any other lien, encumbrance or charge against the Mortgaged Property.

4.    **Escrow.** If required by Mortgagee, Mortgagor shall also make monthly deposits with Mortgagee in a non-interest bearing account, together with and in addition to interest and principal, of a sum equal to one-twelfth of the yearly taxes and assessments which may be levied against the Mortgaged Property, and (if so required) one-twelfth of the yearly premiums for insurance thereon. The amount of such taxes, assessments and premiums, when unknown, shall be estimated by Mortgagee. Such deposits shall be used by Mortgagee to pay such taxes, assessments and premiums when due. Any insufficiency of such account to pay such charges when due shall be paid by Mortgagor to Mortgagee on demand. If, by reason of any default by Mortgagor under any provision of this Mortgage, Mortgagee declares all sums secured hereby to be due and payable, Mortgagee may then apply any funds in such account against the entire indebtedness secured hereby. The enforceability of the covenants relating to taxes, assessments and insurance premiums herein otherwise provided shall not be affected except insofar as those obligations have been met by compliance with this paragraph. Mortgagee may from time to time, at its option, waive, and after any such waiver, reinstate, any or all provisions hereof requiring such deposits by notice to Mortgagor in writing. While any such waiver is in effect, Mortgagor shall pay taxes, assessments and insurance premiums as herein elsewhere provided.

5.    **Taxes on Mortgage.** Mortgagor shall promptly pay all taxes and assessments assessed or levied under and by virtue of any state, federal, or municipal law or regulation hereafter passed against Mortgagee upon this Mortgage or the debt hereby secured, or upon its interest under this Mortgage, provided however, that the total amount so paid for any such taxes pursuant to this paragraph, together with the interest payable on such indebtedness shall not exceed the highest lawful rate of interest in Florida and provided further that in the event of the passage of any such law or regulation imposing a tax or assessment against Mortgagee upon this Mortgage or the debt secured hereby, that the entire indebtedness secured by this Mortgage shall thereupon become immediately due and payable at the option of Mortgagee.

6.    **Insurance.** Mortgagor shall keep the Mortgaged Property insured against loss or damage by fire, and all perils insured against by an extended coverage endorsement; and such other risks and perils

OR BK   9424   PG   474

as Mortgagee, in its discretion, may require. The policy or policies of such insurance shall be in the form in general use from time to time in the locality in which the Mortgaged Property is situated, shall be in such amount as Mortgagee may reasonably require, shall be issued by a company or companies approved by Mortgagee, and shall contain a standard Mortgagee clause with loss payable to Mortgagee. Whenever required by Mortgagee, such policies shall be delivered immediately to and held by Mortgagee. Insurance proceeds or any part thereof may be applied by Mortgagee at its option, after deducting therefrom all its expenses including attorney's fees: to the reduction of the indebtedness hereby secured; to the restoration or repair of the property damaged; or released to Mortgagor. Mortgagee is hereby authorized, at its option, to settle and compromise any claims, awards, damages, rights of action and proceeds, and any other payment or relief under any insurance policy. Neither the application nor the release of any such amounts shall cure or waive any default. Upon exercise of the power of sale given in this Mortgage or other acquisition of the Mortgaged Property or any part thereof by Mortgagee, such policies shall become the absolute property of Mortgagee.

7.   **Written Consent of Mortgagee Required.** Mortgagor shall first obtain the written consent of Mortgagee, such consent to be granted or withheld at the sole discretion of Mortgagee, before:

7.1.   Removing or demolishing any building now or hereafter erected on the premises;

7.2.   Altering the arrangement, design or structural character thereof;

7.3.   Making any repairs which involve the removal of structural parts or the exposure of the interior of such building to the elements; or

7.4.   Removing or exchanging any tangible personal property which is part of the Mortgaged Property.

8.   **Maintenance Obligation.** Mortgagor shall maintain the Mortgaged Property in good condition and repair, including but not limited to the making of such repairs as Mortgagee may from time to time determine to be necessary for the preservation of the Mortgaged Property and shall not commit or permit any waste thereof; and Mortgagee shall have the right to inspect the Mortgaged Property on reasonable notice to Mortgagor.

9.   **Compliance with Laws:** Mortgagor shall comply with all laws, ordinances, regulations, covenants, conditions and restrictions affecting the Mortgaged Property and shall not to cause or permit any violation thereof or any nuisance.

10.   **Mortgagee's Rights to Cure.**

10.1.   If Mortgagor fails to pay any claim, lien or encumbrance which is superior to this Mortgage; or when due, any tax or assessment or insurance premium; or to keep the Mortgaged Property in repair; or shall commit or permit waste; or there be commenced any action or proceeding affecting the Mortgaged Property or the title thereto; or the interest of Mortgagee therein, including but not limited to eminent domain and bankruptcy or reorganization proceedings, then Mortgagee, at its option, may pay such claim, lien, encumbrance, tax, assessment or premium with right of subrogation thereunder; may make such repairs and take such steps as it deems advisable to prevent or cure such waste; and may appear in any such action or proceeding and retain counsel therein and take such action therein as Mortgagee deems advisable; and for any of such purposes Mortgagee may advance such sums of money, including all costs, reasonable attorney's fees, and other

OR BK   9424   PG   475

items of expense as it deems necessary. Mortgagee shall be the sole judge of the legality, validity and priority of any such claim, lien, encumbrance, tax, assessment and premium and of the amount necessary to be paid in satisfaction thereof. Mortgagee shall not be held accountable for any delay in making any such payment, which delay may result in any additional interest, costs, charges, expenses or otherwise, or for failure to exercise any option granted hereunder.

10.2. Mortgagor will pay to Mortgagee, immediately and without demand, all sums of money advanced by Mortgagee to protect the security hereof pursuant to this Mortgage, including all costs, reasonable attorney's fees and other items of expense, together with interest on each such advancement at the highest lawful rate of interest per annum allowed by the law of the State of Florida; and all such sums and interest thereon shall be secured hereby.

11. **Events of Default**. Each of the following, at Mortgagee's option, shall constitute an Event of Default under this Mortgage:

11.1. Payment Default. Borrower fails to make, as and when due: any installment of principal or interest of the Note or any part thereof; any payment; or any other sum secured hereby.

11.2. Other Defaults. Mortgagor fails to comply with or to perform any other term, obligation, covenant or condition contained in this Mortgage or in any of the other documents executed by Mortgagor in connection with the indebtedness secured by this Mortgage or this transaction (including, without limitation, credit agreements, loan agreements, environmental agreements, guaranties, security agreements and all other instruments, agreements and documents, whether now or hereafter existing (the "Related Documents") or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Mortgagee and Mortgagor, and, unless Mortgagor has violated the same obligation, covenant or condition within the preceding 12 months of the failure, or the failure involves the failure to provide insurance or proof thereof, such failure continues for 15 days after written notice thereof from Mortgagee.

11.3. False Statements. Any warranty, representation or statement made or furnished to Mortgagee by Mortgagor, or on behalf of Mortgagor under this Mortgage, the Note, or the Related Documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

11.4. Defective Collateralization. This Mortgage or any of the Related Documents ceases to be in full force and effect (including failure of any collateral document to create a valid and perfected security interest or lien) at any time and for any reason.

11.5. Death or Insolvency. The dissolution or termination of Mortgagor's existence as a going business, the insolvency of Mortgagor, the appointment of a receiver for any part of Mortgagor's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Mortgagor.

11.6. Creditor or Forfeiture Proceedings. Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Mortgagor or by any governmental agency against any property securing the Note. This includes a garnishment of any of Mortgagor's accounts, including deposit accounts, with Mortgagee. However, this Event of Default shall not apply if there is a good

OR BK 9424 PG 476

faith dispute by Mortgagor as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Mortgagor gives Mortgagee written notice of the creditor or forfeiture proceeding and deposits with Mortgagee monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Mortgagee, in its sole discretion, as being an adequate reserve or bond for the dispute.

11.7. Breach of Other Agreement. Any breach by Mortgagor under the terms of any other agreement between Mortgagor and Mortgagee that is not remedied within any grace period provided therein, including without limitation any agreement concerning any indebtedness or other obligation of Mortgagor to Mortgagee, whether existing now or later.

11.8. Events Affecting Guarantor. Any of the preceding events occurs with respect to any Guarantor of the Note or any Guarantor dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any Guaranty of the Note. In the event of a death, Mortgagee, at its option, may, but shall not be required to, permit the Guarantor's estate to assume unconditionally the obligations arising under the guaranty in a manner satisfactory to Mortgagee, and, in doing so, cure any Event of Default.

11.9. Adverse Change. A material adverse change occurs in Mortgagor's financial condition, or Mortgagee believes the prospect of payment or performance of the Note is impaired.

11.10. Change in Ownership. If Mortgagor is a corporation, partnership, limited liability company or other entity, more than twenty-five percent (25%) of the ownership interests in Mortgagor is transferred or newly issued.

11.11. Insecurity. Mortgagee in good faith believes itself insecure.

12. **Remedies Upon Default.** Upon an Event of Default, Mortgagee may pursue one or more of the following remedies:

12.1. Mortgagee may declare the outstanding principal amount of the Note and the interest accrued thereunder, and all other sums secured hereby, to be due and payable immediately. Upon such declaration such principal and interest and other sums shall immediately be due and payable without demand or notice. The indebtedness secured hereby shall bear interest at the highest lawful rate of interest per annum allowed by the law of the State of Florida from and after the date of acceleration.

12.2. If the Note provides for installment payments, the Mortgagee may, at its option, collect a late charge as may be provided for in the Note to reimburse the Mortgagee for expenses in collecting and servicing such installment payments.

12.3. Mortgagee may enforce payment of the Note or the performance of any term hereof or any other right.

12.4. Mortgagee may foreclose this Mortgage and sell, as an entirety or in separate lots or parcels, the Mortgaged Property under the judgment or decree of a court or courts of competent jurisdiction

12.5. Mortgagee may collect all rents, issues, profits, revenue, income and other benefits from the Mortgaged Property and pursue all remedies available to Mortgagee under the Leases assigned to Mortgagee hereunder.

OR BK  9424  PG  47.7

12.6.    Mortgagee may pursue any other remedy available to it including, but not limited to, taking possession of the Mortgaged Property without notice or hearing to Mortgagor.

12.7.    Mortgagee shall be entitled, as a matter of strict right, without notice and ex parte and without regard to the value or occupancy of the security or the solvency of Mortgagor or the adequacy of the Mortgaged Property as security for the Note, to have a receiver appointed to enter upon and take possession of the Mortgaged Property, collect the rents, issues, profits, revenues, royalties, rights, proceeds, accounts, accounts receivable and benefits therefrom, and apply the same as the court may direct; such receiver to have all the rights and powers permitted under the laws of Florida.

12.8.    In any such case set above, Mortgagee or the receiver may also take possession of, and for these purposes use, any and all personal property which is a part of the Mortgaged Property and used by Mortgagor in the rental or leasing thereof or any part thereof. The expense (including receiver's fees, counsel fees, costs and agent's compensation) incurred pursuant to the powers herein contained shall be secured hereby. Mortgagee shall (after payment of all costs and expenses incurred) apply such rents, issues, profits, revenues, royalties, rights, proceeds, accounts, accounts receivable and benefits received by it on the indebtedness secured hereby in such order as Mortgagee determines. The right to enter and take possession of the Mortgaged Property; to manage and operate the same; and to collect the rents, issues, profits, revenues, royalties, rights, proceeds, accounts, accounts receivable and benefits thereof, whether by a receiver or otherwise, shall be cumulative to any other right or remedy hereunder or afforded by law, and may be exercised concurrently therewith or independently thereof. Mortgagee shall be liable to account only for such rents, issues, profits, revenues, royalties, rights, proceeds, accounts, accounts receivable and benefits actually received by Mortgagee.

12.9.    Pursue all other remedies available at law or equity.

13.    **Non-Exclusive Remedies.**

13.1.    No right, power or remedy conferred upon or reserved to Mortgagee by the Note, this Mortgage or any other instrument securing the Note is exclusive of any other right, power or remedy, but each and every such right, power and remedy shall be cumulative and concurrent and shall be in addition to any other right, power and remedy given hereunder or under the Note or any other instrument securing the Note, now or hereafter existing at law, in equity or by statute.

13.2.    If the indebtedness secured hereby is now or hereafter further secured by chattel mortgages, security interests, financing statements, pledges, contracts of guaranty, assignments of leases, or other securities; or if the Mortgaged Property hereby encumbered consists of more than one parcel of real property, Mortgagee may, at its option, exhaust any one or more of such securities and security hereunder or such parcels of the security hereunder, either concurrently or independently, and in such order as it may determine.

14.    **Future Advances.** This Mortgage shall secure not only existing indebtedness, but also such future advances, whether such advances are obligatory or to be made at the option of Mortgagee, or otherwise, as are made within twenty (20) years from the date hereof, to the same extent as if such future advances were made on the date of the execution of this Mortgage, but such secured indebtedness shall not exceed at any time the maximum principal amount of two times the amount of the Note, plus interest thereon, plus any disbursements made for the payment of taxes, levies, or

Filing 222321345

05-2025-CA-027661-XXCA-BC

OR BK   9424   PG   478

insurance on the Mortgaged Property, plus interest on such disbursements. Any such future advances, whether obligatory or to be made at the option of the Mortgagee, or otherwise, may be made either prior to or after the due date of the Note or any other notes secured by this Mortgage. This Mortgage is given for the specific purpose of securing any and all indebtedness by the Mortgagor to Mortgagee (but in no event shall the secured indebtedness exceed at any time the maximum principal amount set forth in this paragraph) in whatever manner this indebtedness may be evidenced or represented until this Mortgage is satisfied of record. All covenants and agreements contained in this Mortgage shall be applicable to all further advances made by Mortgagee to Mortgagor under this future advance clause.

15.    **No Waiver.** No delay by Mortgagee in exercising any right or remedy hereunder, or otherwise afforded by law, shall operate as a waiver thereof or preclude the exercise thereof during the continuance of any default hereunder. No waiver by Mortgagee of any default shall constitute a waiver of or consent to subsequent defaults. No failure of Mortgagee to exercise any option herein given to accelerate maturity of the debt hereby secured, no forbearance by Mortgagee before or after the exercise of such option, and no withdrawal or abandonment of foreclosure proceeding by Mortgagee shall be taken or construed as a waiver of its right to exercise such option or to accelerate the maturity of the debt hereby secured by reason of any past, present or future default on the part of Mortgagor; and, in like manner, the procurement of insurance or the payment of taxes or other liens or charges by Mortgagee shall not be taken or construed as a waiver of its right to accelerate the maturity of the debt hereby secured.

16.    **No Release of Mortgagor.**

16.1.    Without affecting the liability of Mortgagor or any other person (except any person expressly released in writing) for payment of any indebtedness secured hereby or for performance of any obligation contained herein, and without affecting the rights of Mortgagee with respect to any security not expressly released in writing, Mortgagee may, at any time and from time to time, either before or after the maturity of such note, and without notice or consent:

16.1.1.    Release any person liable for payment of all or any part of the indebtedness or for performance of any obligation;

16.1.2.    Make any agreement extending the time or otherwise altering the terms of payment of all or any part of the indebtedness, or modifying or waiving any obligation, or subordinating, modifying or otherwise dealing with the lien or charge hereof;

16.1.3.    Exercise or refrain from exercising or waive any right Mortgagee may have;

16.1.4.    Accept additional security of any kind; and

16.1.5.    Release or otherwise deal with any property, real or personal, securing the indebtedness, including all or any part of the Mortgaged Property.

16.2.    Any agreement hereafter made by Mortgagor and Mortgagee pursuant to this Mortgage shall be superior to the rights of the holder of any intervening lien or encumbrance.

17.    **Condemnation.** In the event of condemnation proceedings of the Mortgaged Property, the award or compensation payable thereunder is hereby assigned to and shall be paid to Mortgagee. Mortgagee shall be under no obligation to question the amount of any such award or compensation

OR BK 9424 PG 479

and may accept the same in the amount in which the same shall be paid. In any such condemnation proceedings, Mortgagee may be represented by counsel selected by Mortgagee. The proceeds of any award or compensation so received shall, at the option of Mortgagee, either be applied to the prepayment of the Note and at the rate of interest provided therein, regardless of the rate of interest payable on the award by the condemning authority; or at the option of Mortgagee, such award shall be paid over to Mortgagor for restoration of the Mortgaged Property.

18.    **Financial Statements.** At the option of Mortgagee, Mortgagor shall provide Mortgagee with periodic certified financial statements of the operations of and the financial condition of Mortgagor.

19.    **Due on Sale; Partial Release.**

19.1.    Due on Sale. The loan represented by this Mortgage and the Note is personal to the Mortgagor and the Mortgagee made the loan to the Mortgagor based upon the credit of the Mortgagor and the Mortgagee's judgment of the ability of the Mortgagor to repay all sums due under this Mortgage, and therefore this Mortgage may not be assumed by any subsequent holder of an interest in the Mortgaged Property. If all or any part of the Mortgaged Property or any interest therein is sold, conveyed, transferred (including a transfer by agreement for deed or land contract), or further encumbered by Mortgagor without Mortgagee's prior written consent (excluding: (a) the grant of any leasehold interest in the Mortgaged Property not containing an option to purchase, which lease is made in the ordinary course of Mortgagor's business; or (b) a partial release pursuant to paragraph 19.2), Mortgagee may declare all sums secured by this Mortgage immediately due and payable. Notwithstanding the foregoing:

19.2.    Partial Release. Mortgagee shall release from the lien of this Mortgage portions of the Mortgaged Property (each a "Release Parcel") as follows:

19.2.1.    Mortgagor shall not be in default under this Mortgage or any other Loan Document.

19.2.2.    The partial release is requested in connection with a bona fide sale of the Release Parcel to a third party

19.2.3.    Mortgagor pays to Mortgagee the amount of $324,000.00 (the "Release Price") for each Release Parcel.

19.2.4.    In connection with each request for a partial release, Mortgagor shall provide to Mortgagee a copy of the contract for sale of the Release Parcel.

19.2.5.    Each payment of a Release Price shall be applied to the Curtailment Payments due under the Note but not to the Interest Payments.

19.2.6.    All releases furnished as hereinabove set forth shall be delivered at the office of the Mortgagee upon payment by certified or bank check or wire transfer of the Release Price accompanied by a Partial Release of Mortgage in such form as is acceptable to Mortgagee in the exercise of its reasonable discretion.

20.    **Entity Status.** Mortgagor represents and warrants that: (a) if a corporation, limited liability company or other legal entity, it is duly organized and validly existing, in good standing under the laws of the state of its formation, has stock, membership interests or other ownership interest

OR BK  9424  PG  480

outstanding which has been duly and validly issued, and is qualified to do business and is in good standing in the state of Florida, with full power and authority to consummate the loan contemplated hereby; and (b) if a partnership, it is duly formed and validly existing, and is fully qualified to do business in the state of Florida, with full power and authority to consummate the loan contemplated hereby.

21.  **Compliance With Environmental Laws:**

21.1.  Definitions.

21.1.1.  "Environmental Laws" mean any and all state, federal and local statutes, regulations and ordinances relating to the protection of human health or the environment, including without limitation the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. Section 9601, et seq. ("CERCLA"), the Superfund Amendments and Reauthorization Act of 1986, Pub. L. No.99-499 ("SARA"), the Hazardous Materials Transportation Act, 49 U.S.C. Section 1801, et seq., the Resource Conservation and Recovery Act, 42 U.S.C. Section 6901, et seq., or other applicable state or federal laws, rules, or regulations adopted pursuant thereto, or any amendments thereto.

21.1.2.  "Hazardous Substances" shall mean and include materials that, because of their quantity, concentration or physical chemical or infectious characteristics, may cause or pose a present or potential hazard to human health or the environment when improperly used, treated, stored, disposed of, generated, manufactured, transported or otherwise handled. The words "Hazardous Substances" are used in their very broadest sense and include without limitation any and all hazardous or toxic substances, materials or waste as defined by or listed under the Environmental Laws. The term "Hazardous Substances" also includes, without limitation, petroleum and petroleum by-products or any fraction thereof and asbestos.

21.2.  Representations and Warranties: Mortgagor specifically represents and warrants that:

21.2.1.  The use and operation of the Mortgaged Property complies with all applicable Environmental Laws and Mortgagor shall continue to comply therewith at all times.

21.2.2.  Specifically, and without limiting the generality of the foregoing, there are not now and there shall not in the future be any Hazardous Substances located or stored in, upon or at the Mortgaged Property, and there are not now nor shall there be at any time any releases or discharges of Hazardous Substances from the Mortgaged Property.

21.2.3.  During the period of Mortgagor's ownership of the Mortgaged Property, there has been no use, generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance by any person on, under, about or from the Mortgaged Property.

21.2.4.  Mortgagor has no knowledge of, or reason to believe that there has been, except as previously disclosed to and acknowledged by Mortgagee in writing, (a) any breach

OR BK   9424   PG   481

or violation of any Environmental Laws; (b) any use, generation, manufacture, storage, treatment, disposal, release, or threatened release of any Hazardous Substance on, under, about or from the Mortgaged Property by any prior owners or occupants of the Mortgaged Property; or (c) any actual or threatened litigation or claims of any kind by any person relating to such matters.

21.2.5.   Except as previously disclosed to and acknowledged by Mortgagee in writing, (a) neither Mortgagor nor any tenant, contractor, agent or other authorized user of the Mortgaged Property shall use, generate, manufacture, store, treat, dispose of, or release any Hazardous Substance on, under, about or from the Mortgaged Property; and (b) any such activity shall be conducted in compliance with all applicable federal, state, and local laws, regulations and ordinances, including without limitation all Environmental Laws.

21.3.   Indemnification:

21.3.1.   Mortgagor shall indemnify Mortgagee and hold Mortgagee harmless from and against any and all losses, liabilities (including strict liability), damages, injuries, expenses (including attorneys' fees for attorneys of Mortgagee's choice), costs of any settlement or judgment, and claims of any and every kind whatsoever paid, incurred or suffered by, or asserted against, Mortgagee by any person or entity or governmental agency for, with respect to, or as a direct or indirect result of, the presence on or under, or the escape, seepage, leakage, spillage, discharge, emission or release from the Mortgaged Property of any Hazardous Substances, regardless of whether within Mortgagor's control. The indemnification agreement set forth in this paragraph includes, without limitation, any losses, liabilities (including strict liability), damages, injuries, expenses (including attorneys' fees for attorneys of Mortgagee's choice), costs of any settlement or judgment or claims asserted or arising under the Comprehensive Environmental Response, Compensation and Liability Act, any federal, state or local "Superfund" or "Superlien" laws, and any and all other statutes, laws, ordinances, codes, rules, regulations, orders or decrees regulating, with respect to or imposing liability, including strict liability, substances or standards of conduct concerning any Hazardous Substances.

21.3.2.   The indemnification and hold harmless agreement set forth in this subparagraph shall benefit Mortgagee from the date hereof and shall continue notwithstanding payment, release or discharge of this Mortgage or the obligations secured hereby, and, without limiting the generality of the foregoing, such obligations shall continue for the benefit of Mortgagee during and following any possession or ownership of the Mortgaged Property by Mortgagee, whether arising by foreclosure or deed in lieu of foreclosure or otherwise, such indemnification and hold harmless agreement to continue forever.

21.4.   Notice of Environmental Complaint: If Mortgagor shall receive any knowledge of notice (actual or constructive) of any of the following (an "Environmental Complaint") from any person or entity, then Mortgagor immediately shall notify Mortgagee orally and in writing:

21.4.1.   The happening of any event involving the spill, release, leak, seepage, discharge, presence or cleanup of any Hazardous Substances on the Land or in connection with Mortgagor's operations thereon; or

05-2025-CA-027661-XXCA-BC

OR BK   9424   PG   482

21.4.2. Any complaint, order, citation or notice with regard to air emissions, water discharges; or

21.4.3. Any other environmental, health or safety matters affecting Mortgagor.

21.5. Mortgagee's Reserved Rights: In the event of an Environmental Complaint, Mortgagee shall have the right, but not the obligation (and without limitation of Mortgagee's rights under this Mortgage) to enter onto the Mortgaged Property or to take such other actions as it shall deem necessary or advisable to clean up, remove, resolve or minimize the impact of, or otherwise deal with, any such Hazardous Substances or Environmental Complaint. All reasonable costs and expenses, including a reasonable attorney's fee, incurred by Mortgagee in the exercise of any such rights shall be secured by this Mortgage; shall be payable by Mortgagor upon demand; and shall accrue interest at the highest lawful rate from the date paid by Mortgagee.

21.6. Environmental Audits:

21.6.1. If Mortgagee shall have reason to believe that Hazardous Substances has been discharged on the Mortgaged Property, Mortgagee shall have the right, in its sole discretion, to require Mortgagor to perform periodically to Mortgagee's satisfaction (but not more frequently than annually unless an Environmental Complaint shall be then outstanding), at Mortgagor's expense, an environmental audit and, if deemed necessary by Mortgagee, an environmental risk assessment of:

a. The Mortgaged Property;

b. Hazardous Substances management practices; and

c. Hazardous Substances disposal sites used by Mortgagor.

21.6.2. Any environmental audit or risk assessment must be by an environmental consultant satisfactory to Mortgagee. Should Mortgagor fail to perform any such environmental audit or risk assessment within thirty (30) days after Mortgagee's request, Mortgagee shall have the right to retain an environmental consultant to perform such environmental audit or risk assessment. All costs and expenses, including a reasonable attorney's fee, incurred by Mortgagee in the exercise of such rights shall be secured by this Mortgage; shall be payable by Mortgagor upon demand; and shall accrue interest at the highest lawful rate from the date paid by Mortgagee.

21.7. Breach: Any breach of any warranty, representation or agreement contained in this Section shall be an Event of Default and shall entitle Mortgagee to exercise any and all remedies provided in this instrument, or otherwise permitted by law.

22. **Cross-Collateralization.** In addition to the Note, this Mortgage secures all obligations, debts and liabilities, plus interest thereon, of Mortgagor to Mortgagee, or anyone or more of them, as well as all claims by Mortgagee against Mortgagor or anyone or more of them, whether now existing or hereafter arising, whether related or unrelated to the purpose of the Note, whether voluntary or otherwise, whether due or not due, direct or indirect, absolute or contingent, liquidated or unliquidated and whether Mortgagor may be liable individually or jointly with others, whether

OR BK  9424  PG  483

obligated as guarantor, surety, accommodation party, or otherwise, and whether recovery upon such amounts may be or hereafter may become barred by any statute of limitations, and whether the obligation to repay such amounts may be or hereafter may become otherwise unenforceable.

23.   **Other Loan Documents.** In connection with this Mortgage, Mortgagor has executed other loan documents in favor of Mortgagee. These loan documents may include, but are not limited to, loan agreements, construction loan agreements, security agreements, loan closing agreements and a waiver of jury trials. Reference is made to all of the loan documents for additional rights of Mortgagee and additional duties and obligations of Mortgagor. Any default by Mortgagor under the terms of any of the loan documents shall constitute a default of this Mortgage and all of the other loan documents and shall entitle Mortgagee to accelerate the principal balance due on the Note and to pursue any and all remedies provided by any of the loan documents.

24.   **Attorney's Fees.** If any legal action or other proceeding (including, without limitation, appeals or bankruptcy proceedings) whether at law or in equity, which: arises out of, concerns, or relates to this Mortgage, any and all transactions contemplated hereunder, the performance hereof, or the relationship created hereby; or is brought for the enforcement of this Mortgage, or because of an alleged dispute, breach, default or misrepresentation in connection with any provisions of this Mortgage, the successful or prevailing party or parties shall be entitled to recover reasonable attorney's fees, court costs and all expenses even if not taxable as court costs, incurred in that action or proceeding, in addition to any other relief to which such party or parties may be entitled.

25.   **Miscellaneous.**

25.1.   Severability. In the event any one or more of the provisions contained in this Mortgage or in the Note shall for any reason be held to be invalid, illegal or unenforceable in any respect, such invalidity, illegality or unenforceability shall, at the option of the Mortgagee, not affect any other provisions of this Mortgage, but this Mortgage shall be construed as if such invalid, illegal or unenforceable provision had never been contained herein or therein.

25.2.   Maximum Interest. The total interest payable pursuant to the Note or this Mortgage shall not in any one year exceed the highest lawful rate of interest permitted in the state of Florida.

25.3.   Reappraisal Agreement. Notwithstanding any term or provision hereof to the contrary, if at any time Mortgagee reasonably determines that the value of the Property may have declined or be less than Mortgagee previously anticipated, within sixty (60) days from Mortgagee's written request to Mortgagor therefore, Mortgagor shall provide to Mortgagee, at Mortgagor's sole cost and expense, a current appraisal of the Mortgaged Property to be ordered by Mortgagee from an appraiser designated by Mortgagee and in form and content as required by Mortgagee. Mortgagor shall cooperate fully with any such appraiser and provide all such documents and information as such appraiser may request in connection with such appraiser's performance and preparation of such appraisal. Mortgagor's failure to promptly and fully comply with Mortgagee's requirements under this paragraph shall, without further notice, constitute an Event of Default under this Mortgage and the Note. Nothing contained herein, however, shall entitle Mortgagee to require reappraisal of the Property if Mortgagee has required such a reappraisal within the previous two (2) years.

OR BK   9424   PG   484

25.4.   Successors and Assigns. The covenants and agreements herein contained shall bind; and the benefits and advantages shall inure to the respective heirs, executors, administrators, successors and assigns of the parties hereto.

25.5.   References. Wherever used, the singular number shall include the plural, the plural the singular, and the use of any gender shall be applicable to all genders. All covenants, agreements and undertakings shall be joint and several.

25.6.   Entire Understanding. This agreement and the other documents executed by the parties in connection with the Note secured hereby represent the entire understanding and agreement between the parties with respect to the subject matter hereof, and supersedes all other negotiations (if any) made by and between the parties.

25.7.   Amendments. The provisions of this agreement may not be amended, supplemented, waived, or changed orally but only by a writing making specific reference to this agreement signed by the party as to whom enforcement of any such amendment, supplement, waiver or modification is sought.

IN WITNESS WHEREOF, Mortgagor has duly executed this Mortgage as of the date first above written.

**MORTGAGOR**

Homemakers Real Estate, LLC, a Florida limited liability company

By: _____
Horton S. Johnson as Manager

_Alison Pitkanen_
Witness Signature
Alison Pitkanen
Witness Printed Name

_Janelle Morea_
Witness Signature
Janelle Morea
Witness Printed Name

OR BK  9424  PG  485

STATE OF FLORIDA
COUNTY OF _Orange_

The foregoing instrument was acknowledged before me by means of **X** physical presence or __ online notarization this February ⎣7⎦, 2022, by Horton S. Johnson as Manager of Homemakers Real Estate, LLC, a Florida limited liability company, on behalf of the limited liability company.

Notary Public, State of Florida
Name: _Janelle Morea_
(Please print or type)
Commission Number: _HH077342_
Commission Expires: _1/5/2025_

<u>Notary: Check one of the following:</u>
___ Personally known OR
_/_ Produced Identification (if this box is checked, fill in blank below).
Type of Identification Produced: _License_

Janelle Morea
Notary Public
State of Florida
Comm# HH077342
Expires 1/5/2025

OR BK 9424 PG 486

## EXHIBIT A
## LEGAL DESCRIPTION

The land referred to herein below is situated in the County of BREVARD, State of FL, and described as follows:

Condominium Unit 103, CAPE CROSSING, a Condominium, together with an undivided Interest in the common elements, according to the Declaration of Condominium thereof recorded in Official Record Book 8418, Page 1832, as amended from time to time, of the Public Records of BREVARD County, Florida.

Condominium Unit 104, CAPE CROSSING, a Condominium, together with an undivided Interest in the time elements, according to the Declaration of Condominium thereof recorded In Official Record Book 8418, Page 1832, as amended from time to time, of the Public Records of BREVARD County, Florida.

Condominium Unit 106, CAPE CROSSING, a Condominium, together with an undivided Interest in the common elements, according to the Declaration of Condominium thereof recorded In Official Record Book 8418, Page 1832, as amended from time to time, of the Public Records of BREVARD County, Florida.

Condominium Unit 107, CAPE CROSSING, a Condominium, together with an undivided Interest in the common elements, according to the Declaration of Condominium thereof recorded In Official Record Book 8418, Page 1832, as amended from time to time, of the Public Records of BREVARD County, Florida.

Condominium Unit 202, CAPE CROSSING, a Condominium, together with an undivided Interest in the common elements, according to the Declaration of Condominium thereof recorded In Official Record Book 8418, Page 1832, as amended from time to time, of the Public Records of BREVARD County, Florida.

Condominium Unit 203, CAPE CROSSING, a Condominium, together with an undivided interest in the common elements, according to the Declaration of Condominium thereof recorded in Official Record Book 8418, Page 1832, as amended from time to time, of the Public Records of BREVARD County, Florida.

Condominium Unit 204, CAPE CROSSING, a Condominium, together with an undivided interest in the common elements, according to the Declaration of Condominium thereof recorded in Official Record Book 8418, Page 1832, as amended from time to time, of the Public Records of BREVARD County, Florida.

Condominium Unit 205, CAPE CROSSING, a Condominium, together with an undivided interest in the common elements, according to the Declaration of Condominium thereof recorded In Official Record Book 8418, Page 1832, as amended from time to time, of the Public Records of BREVARD County, Florida.

Condominium Unit 207, CAPE CROSSING, a Condominium, together with an undivided Interest in the common elements, according to the Declaration of Condominium thereof recorded in Official Record Book 8418, Page 1832, as amended from time to time, of the Public Records of BREVARD County, Florida.

OR BK    9424    PG    487

Condominium Unit 307, CAPE CROSSING, a Condominium, together with an undivided interest in the common elements, according to the Declaration of Condominium thereof recorded In Official Record Book 8418, Page 1832, as amended from time to time, of the Public Records of BREVARD County, Florida.

Condominium Unit 407, CAPE CROSSING, a Condominium, together with an undivided interest in the common elements, according to the Declaration of Condominium thereof recorded in Official Record Book 8418, Page 1832, as amended from time to time, of the Public Records of BREVARD County, Florida.

Condominium Unit 507, CAPE CROSSING, a Condominium, together with an undivided interest in the common elements, according to the Declaration of Condominium thereof recorded In Official Record Book 8418, Page 1832, as amended from time to time, of the Public Records of BREVARD County, Florida.

AND

Building #2 Unit 101

A parcel of land lying in Section 11, Township 24 South, Range 36 East, Tallahassee Base Meridian, Brevard County, Florida, being a part of the lands as described in Official Records Book 6890, Page 2520, Public Records of Brevard County, Florida, and being more particularly described as follows:

Commence at the intersection of the Westerly right-of-way line of North Courtenay Parkway and the South Property Line of the Canaveral Port Authority (described as the Point-of-Beginning in Official Records Book 6212, Page 2393, aforesaid Public Records); thence S79°58'00"W, along the South line of the Canaveral Port Authority, a distance of 58.85 feet; thence S10°02'00"E, perpendicular to said South line of the Canaveral Port Authority, a distance of 121.30 feet to the Point-of-Beginning; thence continue S10°02'00"E, a distance of 52.67 feet; thence S79°58'00"W, a distance of 21.00 feet; thence N10°02'00"W, a distance of 70.00 feet; thence N79°58'00"E, a distance of 12.33 feet; thence S10°02'00"E, a distance of 17.33 feet; thence N79°58'00"E, a distance of 8.67 feet to the Point-of-Beginning.

Building #2 Unit 102

A parcel of land lying in Section 11, Township 24 South, Range 36 East, Tallahassee Base Meridian, Brevard County, Florida, being a part of the lands as described in Official Records Book 6890, Page 2520, Public Records of Brevard County, Florida, and being more particularly described as follows:

Commence at the intersection of the Westerly right-of-way line of North Courtenay Parkway and the South Property Line of the Canaveral Port Authority (described as the Point-of-Beginning in Official Records Book 6212, Page 2393, aforesaid Public Records); thence S79°58'00"W, along the South line of the Canaveral Port Authority, a distance of 79.85 feet; thence S10°02'00"E, perpendicular to said South line of the Canaveral Port Authority, a distance of 103.97 feet to the Point-of-Beginning; thence continue S10°02'00"E, a distance of 70.00 feet; thence S79°58'00"W, a distance of 20.67 feet; thence N10°02'00"W, a distance of 52.67 feet; thence N79°58'00"W, a distance of 8.33 feet; thence N10°02'00"W, a distance of 17.33 feet; thence N79°58'00"E, a distance of 12.33 feet to the Point-of-Beginning.

OR BK  9424  PG  488

Building #6 Unit 102

A parcel of land lying in Section 11, Township 24 South, Range 36 East, Tallahassee Base Meridian, Brevard County, Florida, being a part of the lands as described in Official Records Book 6890, Page 2520, Public Records of Brevard County, Florida, and being more particularly described as follows:

Commence at the intersection of the Westerly right-of-way line of North Courtenay Parkway and the South property line of the Canaveral Port Authority (described as the Point-of-Beginning in Official Records Book 6212, Page 2393, aforesaid public records); thence S79° 58'00"W, along the South line of the Canaveral Port Authority, a distance of 172.97 feet to a point; thence continue along said South property line, S82° 14'00"W, a distance of 409.06 feet; thence S07° 46'00"E, perpendicular to said South line of the Canaveral Port Authority, a distance of 130.97 feet to the Point-of-Beginning; thence continue S07° 46'00"E, a distance of 70.00 feet; thence S82° 14'00"W, a distance of 20.67 feet; thence N07° 46'00"W, a distance of 52.67 feet; thence N82° 14'00"E, a distance of 8.33 feet; thence N07° 46'00"W, a distance of 17.33 feet; thence N82° 14'00"E, a distance of 12.33 feet to the Point-of-Beginning.

Building #6 Unit 103

A parcel of land lying in Section 11, Township 24 South, Range 36 East, Tallahassee Base Meridian, Brevard County, Florida, being a part of the lands as described in Official Records Book 6890, Page 2520, Public Records of Brevard County, Florida, and being more particularly described as follows:

Commence at the intersection of the Westerly right-of-way line of North Courtenay Parkway and the South property line of the Canaveral Port Authority (described as the Point-of-Beginning in Official Records Book 6212, Page 2393, aforesaid public records); thence S79° 58'00"W, along the South line of the Canaveral Port Authority, a distance of 172.97 feet to a point; thence continuing along said South property line, S82° 14'00"W, a distance of 429.73 feet; thence S07° 46'00"E, perpendicular to said South line of the Canaveral Port Authority, a distance of 148.30 feet to the Point-of-Beginning; thence continue S07° 46'00"E, a distance of 52.67 feet; thence S82° 14'00"W, a distance of 20.67 feet; thence N07° 46'00"W, a distance of 70.00 feet; thence N82° 14'00"E, a distance of 12.33 feet; thence S07° 46'00"E, a distance of 17.33 feet; thence N82° 14'00"E, a distance of 8.33 feet to the Point-of-Beginning.

Building #7 Unit 101

A parcel of land lying in Section 11, Township 24 South, Range 36 East, Tallahassee Base Meridian, Brevard County, Florida, being a part of the lands as described in Official Records Book 6890, Page 2520, public records of Brevard County, Florida, and being more particularly described as follows:

Commence at the Southwest corner of aforesaid Section 11, Township 24 South, Range 36 East (Department of Natural Resources Certified Section Corner No. 22981 C); thence N00° 27'47"W, along the West line of said Section 11, a distance of 126.39 feet to a 5/8 inch iron rod stamped D.O.T marking the intersection of the North right-of-way line of Marine Harbor Drive at the Southwest corner of the lands as described in Official Records Book 6890, Page 2520, aforesaid public records of Brevard County, Florida; thence continue N00°27'47"W, along said West line of Section 11, a distance of 199.41 feet; thence N89°32'13"E, perpendicular to said line, a distance of 114.00 feet to the point-of-beginning; thence continue N89°32'13"E, a distance of 70.00 feet; thence N00°27'47"W, a distance of 21.00 feet; thence S89°32'13"W, a distance of 52.67 feet; thence S00°27'47"E, a distance of 8.67 feet; thence

OR BK 9424 PG 489

Building #7 Unit 103

A parcel of land lying in Section 11, Township 24 South, Range 36 East, Tallahassee Base Meridian, Brevard County, Florida, being a part of the lands as described in Official Records Book 6890, Page 2520, public records of Brevard County, Florida, and being more particularly described as follows:

Commence at the Southwest corner of aforesaid Section 11, Township 24 South, Range 36 East (Department of Natural Resources Certified Section Corner No. 22981 C); thence N00° 27'47"W, along the West line of said Section 11, a distance of 126.39 feet to a 5/8 inch iron rod stamped D.O.T marking the intersection of the North right-of-way line of Marine Harbor Drive at the Southwest corner of the lands as described in Official Records Book 6890, Page 2520, aforesaid public records of Brevard County, Florida; thence continue N00°27'47"W, along said West line of Section 11, a distance of 157.74 feet; thence N89°32'13"E, perpendicular to said line, a distance of 131.33 feet to the point-of-beginning; thence continue N89°32'13"E, a distance of 52.67 feet; thence N00°27'47"W, a distance of 21.00 feet; thence S89°32'13"W, a distance of 70.00 feet; thence S00°27'47"E, a distance of 12.33 feet; thence N89°32'13"E, a distance of 17.33 feet; thence S00°27'47"E, a distance of 8.67 feet to the point-of-beginning.

Building #8 Unit 101

A parcel of land lying in Section 11, Township 24 South, Range 36 East, Tallahassee Base Meridian, Brevard County, Florida, being a part of the lands as described in Official Records Book 6890, Page 2520, public records of Brevard County, Florida, and being more particularly described as follows:

Commence at the Southwest corner of aforesaid Section 11, Township 24 South, Range 36 East (Department of Natural Resources Certified Section Corner No. 22981 C); thence N00° 27'47"W, along the West line of said Section 11, a distance of 126.39 feet to a 5/8 inch iron rod stamped D.O.T marking the intersection of the North right-of-way line of Marine Harbor Drive at the Southwest corner of the lands as described in Official Records Book 6890, Page 2520, aforesaid public records of Brevard County, Florida; thence continue N00°27'47"W, along said West line of Section 11, a distance of 121.74 feet; thence N89°32'13"E, perpendicular to said line, a distance of 114.00 feet to the point-of-beginning; thence continue N89°32'13"E, a distance of 70.00 feet; thence N00°27'47"W, a distance of 21.00 feet; thence S89°32'13"W, a distance of 52.67 feet; thence S00°27'47"E, a distance of 8.67 feet; thence S89°32'13"W, a distance of 17.33 feet; thence S00°27'47"E, a distance of 12.33 feet to the point-of-beginning.

# EXHIBIT C

CFN 2023062328, OR BK 9750   Page 1972, Recorded 03/30/2023 at 09:32 AM Rachel ꓕ Sadoff, Clerk of Courts, Brevard County

Record  $27.00
This instrument prepared by:
Robert D. Wilson
954 East Silver Springs Boulevard
Ocala, Florida 34470  .

DOCUMENTARY STAMP TAX AND INTANGIBLE TAX WERE PREVIOUSLY PAID ON THE ORIGINAL INDEBTEDNESS.

---

## MORTGAGE MODIFICATION AGREEMENT

THIS AGREEMENT made and effective on March 24, 2023, by and between HOMEMAKERS REAL ESTATE, LLC, a Florida limited liability company, (hereinafter "Mortgagor") whose address is 2875 S Orange Ave,Ste 500 #6409, Orlando, FL 32806 and MAINSTREET COMMUNITY BANK OF FLORIDA ("Mortgagee"), whose address is 204 s. Woodland Blvd., DeLand, FL, 32720.

### WITNESSETH:

WHEREAS, on February 17, 2022, Mortgagor executed and delivered to Mortgagee a Promissory Note in the original principal amount of $5,061,363.00 secured by a Mortgage Deed and Security Agreement, ("Mortgage") securing payment of the same, which Mortgage and Security Agreement encumbered certain real property located in BREVARD County, Florida and was recorded in OR Book 9424, Page 471, Public Records of BREVARD County, Florida; and

WHEREAS, in addition to the Note and Mortgage described in the preceding paragraph Mortgagor executed and delivered other Loan Documents including a Assignment of Lease and Rents Agreement recorded in O. R. Book 9424, Page 490; UCC-1 Financial Statement recorded in O. R. Book 9424, Page 502 together with Loan Agreement, Security Agreement, Guaranties and other Loan Documents (hereinafter referred to as "Loan Documents"); and

WHEREAS, Mortgagor and Mortgagee have agreed and desire to enter into this Agreement to modify certain terms and conditions of the Note, Mortgage and Loan Documents.; and

NOW, THEREFORE, in consideration of the mutual covenants contained herein, and other good and valuable consideration, the parties do hereby agree as follows:

1.    Incorporation of Recitals.   The parties acknowledge that the above recitals are true and correct and their terms and provisions are incorporated herein for all purposes.

2.    Modification.  Mortgagor and Mortgagee agree that as of the date of the execution of the Agreement the total outstanding indebtedness owned by Mortgagor to Mortgagee is the sum of $3,765,363.00, free of defenses, counter claims and setoffs.   Of even date of herewith Mortgagor has executed a Renewal Promissory Note in the same amount and Mortgagor agrees to make monthly payments in accordance with the terms of said Renewal Promissory Note, the first such payment being due and payable one month from the date of this Mortgage Modification Agreement, and with payments due thereafter on same day of each month until the Maturity Date of March 24, 2028.   All payments received by Mortgagee shall be applied first to accrued and unpaid interest, then to principal.

6.    Ratification of Loan Documents.   The terms and conditions of the Promissory Note, Mortgage and all Loan Documents are hereby confirmed and ratified.

OR BK  9750  PG  1973

IN WITNESS WHEREOF, the parties hereto have executed this Agreement on the date and year first above stated.

Signed, sealed and delivered
in our presence as witnesses:

MORTGAGOR:

HOMEMAKERS REAL ESTATE, LLC
a Florida limited liability company

By: _____
    Horton S. Johnson, Manager

_____
Witness #1 sign name above

_____
Witness #1 print name above

_____
Witness #2 sign name above

_____
Witness #2 print name above

STATE OF FLORIDA
COUNTY OF Brevard

The foregoing instrument was acknowledged before me (x) physical presence or by ( ) online notarization, this 24th  day of March, 2023, by Horton S. Johnson, Manager of HOMEMAKERS REAL ESTATE, LLC, a Florida limited liability company, on its behalf, who is (a) ___✓ personally known to me or (b) ____ produced a driver's license as identification.

Notary stamp or seal:

_____
Notary Public

Notary Public State of Florida
Janie S Tank
My Commission GG 917074
Expires 01/09/2024

OR BK  9750  PG  1974

LENDER:

MAINSTREET COMMUNITY BANK OF FLORIDA

BY: _____

Name: _Angie Clifton_

Title: _Market President/SVP_

_____
Witness #1 sign name above

_Joseph W. Toscano_
Witness #1 print name above

_____
Witness #2 sign name above

_Kimberly Miles_
Witness #2 print name above

STATE OF FLORIDA
COUNTY OF _Brevard_

The foregoing instrument was acknowledged before me (x) physical presence or by ( ) online notarization this 24th day of March , 2023, by _Angie Clifton_ , as _Mkt. Pres./SVP_ of MAINSTREET COMMUNITY BANK OF FLORIDA, who is (a) _✓_ personally known to me or (b) ____ produced a driver's license as identification.

Notary stamp or seal

_____
Notary Public

Notary Public State of Florida
Janie S Tank
My Commission GG 917074
Expires 01/09/2024

3

# EXHIBIT D

Prepared by:
Robert D. Wilson
Wilson & Williams PA
954 E Silver Springs Blvd
Ocala FL 34470

## PROMISSORY NOTE

$735,000.00                                                                          June 13, 2023

       FOR VALUE RECEIVED, the undersigned, **HOMEMAKERS REAL ESTATE, LLC, a Florida limited liability company,** whose address is 2875 S Orange Ave, Ste 500 #6409, Orlando FL 32806 (hereinafter referred to as the "Borrower"), promises to pay to **Mainstreet Community Bank of Florida** (hereinafter referred to as the "Lender"), in the manner hereinafter specified, the principal sum of SEVEN HUNDRED THIRTY-FIVE THOUSAND and 00/100 Dollars (**$735,000.00**), or as much thereof as may be advanced by Lender from time to time, with interest from date at the per annum rate of Seven percent (9.0%). The said principal and interest shall be payable in lawful money of the United States of America at 204 S. Woodland Blvd., DeLand, Florida 32720 or at such place as may hereafter be designated by written notice from the Lender to the Borrower, on the dates and in the manner following:

    a.  Beginning thirty days from the date of this renewal note, and continuing the same day of each month thereafter, this Note shall be repaid in monthly installments of principal and interest in the amount of SIX THOUSAND SIX HUNDRED SEVENTY-SEVEN AND 10/100 Dollars ($6,677,10) commencing the 13th day of July, 2023 and continuing on the same day of each month thereafter until June 13, 2028 (the "Maturity Date").

    b.  On or before the Maturity Date Borrower shall pay to Lender a balloon payment of equal to SIX HUNDRED FIFTY-NINE THOUSAND EIGHT HUNDRED EIGHTY-THREE AND 63/100 Dollars ($659,883.63), together with accrued interest, unpaid interest, late fees, and all other amounts payable hereunder.

This Note is computed on a 365/360 basis; that is, by applying the ratio of the interest rate over a year of 360 days, multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding. All interest payable under this Note is computed using this method. This calculation method results in a higher effective interest rate than the numeric interest rate stated in this Note.

       **THIS LOAN IS PAYABLE IN FULL ON THE 13th DAY OF JUNE, 2028. AT MATURITY YOU MUST REPAY THE ENTIRE PRINCIPAL BALANCE OF THE LOAN AND UNPAID INTEREST THEN DUE. THE LENDER IS UNDER NO OBLIGATION TO REFINANCE THE LOAN AT THAT TIME. YOU WILL THEREFORE BE REQUIRED TO MAKE PAYMENT OUT OF OTHER ASSETS YOU MAY OWN, OR YOU WILL HAVE TO FIND A LENDER WILLING TO LEND YOU THE MONEY. IF YOU REFINANCE THIS LOAN AT MATURITY, YOU MAY HAVE TO PAY SOME OR ALL OF THE CLOSING COSTS NORMALLY ASSOCIATED WITH ANY NEW LOAN EVEN IF YOU OBTAIN REFINANCING FROM THE SAME LENDER.**

1

**Annual Debt Service Recapture Covenant.** Borrower agrees and covenants that it will apportion thirty percent (30.0%) of its annual cash flow earnings above its annual debt to the Lender as a principal reduction payment on the outstanding balance of the Loan (each annual payment referred to as the "Principal Recapture"). The Principal Recapture will be calculated and paid to Lender in accordance with Article 2.5 of a certain loan agreement between Borrower and Lender of even date herewith ("Loan Agreement"), which by reference is incorporated herein.

**Legal Interest Rate.** All terms, conditions and agreements herein are expressly limited so that in no contingency or event whatsoever, whether by reason of advancement of the proceeds hereof, acceleration of maturity of the unpaid principal balance hereof, or otherwise, shall the amount paid or agreed to be paid to the Lender hereof for the use, forbearance, or detention of the money to be advanced hereunder exceed the highest lawful rate permissible under applicable laws. If, from any circumstances whatsoever, fulfillment of any provision hereof shall involve transcending the limit of validity prescribed by law which a court of competent jurisdiction may deem applicable hereto, then ipso facto, the obligation to be fulfilled shall be reduced to the limit of such validity, and if under any circumstances the Lender hereof shall ever receive as interest an amount which would exceed the highest lawful rate, such amount which would be excessive interest shall be applied to the reduction of the unpaid principal balance due hereunder and not to the payment of interest.

**Capital Loan.** This Note is secured by a certain Mortgage and Security Agreement of dated April 29, 2016, which encumbers certain real estate and fixtures situated in Alachua County, Florida (herein sometimes referred to as the "Mortgage"), as modified by Mortgage Modification and Collateral Spreading Agreement of even date herewith, and is further secured by other Loan Documents, identified in the Loan Agreement, which Loan Documents and Loan Agreement are incorporated herein by this reference.

**Due On Sale.** Any sale, conveyance, or transfer effecting (a) a change in ownership of the Property; or (b) a change in ownership or control of Borrower shall accelerate the remaining balance of the Note which shall be immediately due and payable without demand or notice.

**Financial Reporting.** Borrower, and any Guarantor, shall furnish Lender such financial information concerning the Borrower, Mortgaged Property (as defined in the Mortgage) or any Guarantor as Lender may reasonably request from time to time all in a form satisfactory to Lender. Lender may require that financial statements be CPA Reviewed, Compiled and/or Certified. Annual financial statements and tax returns of Borrower and any Guarantor shall be delivered to Lender within 90 days following a request of the same by Lender. Borrower and any Guarantor shall furnish to Lender copies of any extensions to file tax returns. In the event the aforementioned documents are not provided to Lender within the time provided herein, the interest rate provided in this Note, may, at Lender's option, increase to the default rate of interest of eighteen percent (18%) for so long as Borrower or any Guarantor do not comply with this Paragraph, including any other remedies available to Lender for an event of default.

**Banking Relationship.** Borrower agrees to maintain a depository relationship with Lender during the term of this Note, and failure to do so shall constitute a default.

**Secondary Financing.** Any secondary financing secured by the real or personal property described in the Mortgage and Security Agreement executed on even date herewith, which secures this Note, without the prior consent of Lender shall be a default.

2

Cross Default. Borrower has now or may hereinafter have obligations to Lender under other notes or credit facilities (collectively referred to as "Other Notes"). A default in the Other Notes is a default herein and a default herein is a default in the Other Notes.

Acceleration. If default be made in the payment of any of the sums or interest mentioned herein, or in the Mortgage, or any guaranty of this Note, or the Loan Documents, or in the performance of any of the agreements contained herein or in said Mortgage, or Loan Documents, then the entire principal sum and accrued interest shall, at the option of Lender, become at once due and collectible without notice, time being of the essence; and said principal sum and accrued interest shall both bear interest from such time until paid at the "Default Rate" as hereinafter defined. Failure to exercise this option shall not constitute a waiver of the right to exercise the same. In the event of any subsequent default. For purposes of this Note the "Default Rate" shall mean the lesser of eighteen percent (18%) per annum, or the highest rate permitted by appropriate law. The Default Rate shall apply automatically after maturity of this Note, whether by acceleration or otherwise.

Set-off. Lender is hereby given a lien upon and security interest in all property of Borrower (each of them if more than one) now or at any time hereafter in the possession of Lender in any capacity including but not limited to any balance or share of any deposit, trust, or agent account, as security for the payment of this Note and Lender shall, upon any default of Borrower hereunder, have the remedies of a secured party as to the same under the Florida Uniform Commercial Code. Lender is hereby authorized and shall have the right, immediately and without further action by it, to set-off against this Note, any deposit accounts of Borrower (or any or all of them if more than one), as well as any money, instrument, securities, documents, chattel paper, credits, claims, demand, income and any other property rights and interests of any Borrower which at the time shall come into the possession or custody or under the control of Lender or any of its agents, affiliates or correspondents.

Severability. The parties hereto intend and believe that each provision in this Note comports with all applicable local, state, and federal laws and judicial decisions. However, if any provisions, provision, or portion of any provision in this Note is found by a court of competent jurisdiction to be in violation of any applicable local, state or federal ordinance, statute, law, or administrative or judicial decision, or public policy, and if such court would declare such portion, provision or provisions of this Note to be illegal, invalid, unlawful, void or unenforceable as written, then it is the intent of all parties hereto that such portion, provision or provisions shall be given force and effect to the fullest possible extent that they are legal, valid and enforceable, and that the remainder of this Note shall be construed as if such illegal, invalid, unlawful, void or unenforceable portion, provision or provisions were severable and not contained therein, and that the rights, obligations and interest of the Borrower and the Lender under the remainder of this Note shall continue in full force and effect.

Waivers, Attorney's Fees and Costs. Each person liable hereunder whether Borrower or Guarantor, hereby waives presentment, protest, notice, notice of protest and notice of dishonor and agrees to pay all costs, including a reasonable attorney's fee, whether suit be brought or not, and whether at trial or on appeal, if, after maturity of this Note or default hereunder, counsel shall be employed to collect this Note.

Late Charge. The Lender may collect a late charge not to exceed an amount equal to five percent (5%) of any installment of principal or interest which is not paid within ten (10) days of the due date thereof, to cover the extra expense involved in handling delinquent payments, provided that collection of said late charge shall not be

3

deemed a waiver by the Lender of any of its rights under this Note. No past or future waiver of any late charge or charges shall preclude or restrict Lender's right to impose such late charge.

**Waiver of Jury Trial.** BORROWER AND LENDER HEREBY KNOWINGLY, VOLUNTARILY, AND INTENTIONALLY WAIVE THE RIGHT EITHER MAY HAVE TO A TRIAL BY JURY IN RESPECT OF ANY LITIGATION BASED HEREON OR ARISING OUT OF, UNDER OR IN CONNECTION WITH THIS NOTE AND ANY AGREEMENT CONTEMPLATED TO BE EXECUTED IN CONJUNCTION HEREWITH, OR COURSE OF CONDUCT, COURSE OF DEALING, STATEMENTS (WHETHER VERBAL OR WRITTEN) OR ACTIONS OF EITHER PARTY. THIS PROVISION IS A MATERIAL INDUCEMENT FOR LENDER ENTERING INTO THIS NOTE.

**Legal Review.** The undersigned has read this Note and understands its content. The representative executing this Note on behalf of the Borrower is empowered to do so and thereby binds the company. The Borrower acknowledges that it has had an opportunity to consult with legal counsel in the formulation and execution of this Note.

**Joint and Several Liability.** All the parties executing this Note or otherwise becoming liable for the debt and obligations evidenced herein shall be, jointly and severally, obligated hereunder and in furtherance agree that no release, compromise, indulgence, extension, renewal, non-exercise of right or remedy, suit, or collection effort, whether against one, some or all of such liable parties shall release, reduce or affect in any way the liability or indebtedness of any other such liable
party.

**Terminology.** Whenever used herein, the terms "Borrower", "Guarantor", and "Lender" shall be construed in the singular or plural as the context may require or admit.

**Applicable Law.** This Note is to be construed according to the laws of the State of Florida.

**Captions.** Captions and headings in this Note are for convenience only and shall not be relied upon in construing the meaning of this Note or any of its provisions.

*Signatures on the following page(s).*

4

DATED, this 13th day of June, 2023.

HOMEMAKERS REAL ESTATE, LLC
a Florida limited liability company

BY: _____
Horton S. Johnson, Manager

STATE OF FLORIDA
COUNTY OF Orange

The foregoing instrument was acknowledged before me by physical presence on this 13 day of June 2023, by Horton S. Johnson, as Manager of HOMEMAKERS REAL ESTATE, LLC, a Florida limited liability company, who is ( ) personally known to me or (✓) who has produced License as identification and who executed on behalf of himself and the limited liability company.

Notary Seal/Stamp

_____
Notary Public

Janelle Morea
Notary Public
State of Florida
Comm# HH077342
Expires 1/5/2025

5

# EXHIBIT E

CFN 2023126531, OR BK 9816 Page 77, Recorded 06/16/2023 at 04:59 PM Rachel M. Sadoff, Clerk of Courts, Brevard County Doc M: $2572.50 Int. Tax: $1470.00

This Instrument Prepared By and Return to:
Robert D. Wilson
Wilson & Williams, P.A.
954 East Silver Springs Boulevard, Suite 101
Ocala, Florida 34470

THIS IS A BALLOON MORTGAGE AND THE FINAL PAYMENT, OR THE BALANCE DUE UPON MATURITY, IS APPROXIMATELY $659,883.63 TOGETHER WITH ALL ACCRUED INTEREST, IF ANY, AND ALL ADVANCEMNTS MADE BY THE MORTGAGEE UNDER THE TERMS OF THE MORTGAGE.

## MORTGAGE DEED AND SECURITY AGREEMENT

THIS MORTGAGE DEED AND SECURITY AGREEMENT (the "Mortgage") dated this 13th day of June, 2023 by and between HOMEMAKERS REAL ESTATE, LLC, a Florida limited liability company, whose address 2875 S Orange Ave, Ste 500 #6409, Orlando, FL 32806 (hereinafter called "Mortgagor"), and MAINSTREET COMMUNITY BANK OF FLORIDA, whose address is 204 S. Woodland Blvd. Deland FL 32720 (hereinafter called "Mortgagee");

NOW, THEREFORE, in consideration of the loan evidenced by the promissory note referred to hereafter, and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Mortgagor agrees as follows:

1. **Grant of Mortgage.**

   1.1. This Mortgage is given in order to secure the payment of both the principal and interest and any other sums payable on the promissory note of even date herewith in the original principal amount of $735,000.00 from Mortgagor to Mortgagee together with all renewals of, extensions of, modifications of, refinancings of, consolidations of, and substitutions for the promissory note (collectively, the "Note") or this Mortgage, and the performance and observance of all of the provisions hereof and of the Note.

   1.2. Mortgagor hereby grants, sells, warrants, conveys, assigns, transfers, mortgages and sets over and confirms unto Mortgagee all of Mortgagor's estate, right, title and interest in, to and under the following (collectively, the "Mortgaged Property"):

      1.2.1. All that certain real property (the "Real Property") situate in BREVARD County, Florida, more particularly described as follows:

      ### SEE ATTACHED EXHIBIT "A"

      1.2.2. All buildings, structures, betterments, and other improvements of any nature now or hereafter situated in whole or in part upon the Real Property, regardless of whether physically affixed thereto or severed or capable of severance therefrom. The foregoing items are jointly and severally sometimes referred to as "Improvements" in this instrument.

      1.2.3. All easements and other rights of any nature whatsoever appurtenant to the Real Property, the Improvements, or the use made or operations conducted upon the Real Property, including, without limitation, all rights of way, streets, alleys, passages, drainage rights, sewer rights, water rights and rights of ingress and egress to the Real Property, and all adjoining property, whether now existing or hereafter arising, together

OR BK 9816 PG 78

with the reversion or reversions, remainder or remainders, rents, issues, incomes and profits of any of the foregoing, and together with any and all benefits arising from or relating to any one or more of the foregoing. The foregoing items are jointly and severally sometimes referred to as "Appurtenances" in this instrument.

1.2.4. All fixtures, appliances apparatus, equipment, furnishings, heating and air conditioning equipment, machinery and articles of personal property and all replacements thereof, now or hereafter affixed to, attached to, placed upon, or used in any way in connection with the complete and comfortable use, occupancy, or operation of the Real Property or Improvements. The foregoing includes, without limitation, all components of any gasoline storage or distribution systems, all heating, air conditioning, lighting, incinerating and power equipment; all engines, compressors, pipes, pumps, tanks, wells, water mains, laterals, manholes, motors, conduits, wiring and switchboards; all plumbing, lifting, cleaning, fire prevention, fire extinguishing, refrigerating, ventilating, and communications apparatus; all boilers, furnace, oil burners, vacuum cleaning systems, elevators and escalators; all stoves, ovens, ranges, disposal units, dishwashers, water heaters, exhaust systems, refrigerators, cabinets and partitions; all rugs and carpets; all laundry equipment; all building materials, all furniture, furnishings, computers, printers, copiers, telephone systems and other office equipment and office supplies (including stationery, letterheads, billheads and items of a similar nature); and all additions, accessions, renewals, replacements and substitutions of any or all of the foregoing The foregoing items are jointly and severally sometimes referred to as "Tangible Property" in this instrument.

1.2.5. This section intentionally left blank;

1.2.6. All rents, issues, proceeds, profits, revenues, royalties, rights, accounts, accounts receivable and benefits in any manner arising from, relating to, or accruing from the Mortgaged Property, or any combination, including Mortgagor's interest in and to all leases, licenses, franchises and concessions, including all amendments, modifications, replacements, substitutions, extensions, renewals, or consolidations. The foregoing items are jointly and severally sometimes referred to as "Rents and Income" in this instrument.

1.2.7. All proceeds of the conversion, voluntary or involuntary, of any of the Mortgaged Property into cash or other liquidated claims, or that are otherwise payable for injury to, or the taking or requisitioning of, any Mortgaged Property, including all insurance and condemnation proceeds. The foregoing items are jointly and severally sometimes referred to as "Proceeds" in this instrument.

1.2.8. Any and all contracts, written or oral, express or implied, now existing or hereafter entered into or arising from, or related to, the Mortgaged Property or the use, operation, sale, conversion, or other disposition of any interest in the Mortgaged Property, including, without limitation, any and all deposits, prepaid items, and payments due and to become due thereunder, and including, without limitation, construction contracts, service contracts, advertising contracts, purchase orders, and equipment leases. The foregoing items are jointly and severally sometimes referred to as "Contract Rights" in this instrument.

1.2.9. All contract rights, accounts, instruments and general intangibles, as such terms from time to time are defined in the Florida Uniform Commercial Code, in any manner related to the use, operation, sale, conversion or other disposition (voluntary or

05-2025-CA-027661-XXCA-BC

OR BK   9816   PG   79

involuntary) of the Mortgaged Property, including all permits, licenses, insurance policies, rights of action and other chooses in action. The foregoing items are jointly and severally sometimes referred to as "Other Intangibles" in this instrument.

1.2.10. All of Mortgagor's right, power, or privilege to further encumber any of the Mortgaged Property, it being intended by this provision to divest Mortgagor of the power to encumber or to grant a security interest in any of the Mortgaged Property as security for the performance of any obligation. The foregoing items are jointly and severally sometimes referred to as "Secondary Financing" in this instrument.

1.2.11. All names now or hereafter used in connection with the Real Property and Improvements, and all related marks, logos, and insignia. The foregoing items are jointly and severally sometimes referred to as the "Name" in this instrument.

1.2.12. The Mortgaged Property includes, without limitation, all of the following: all contracts, plans, surveys, engineering data, licenses, permits, and development rights and other information and documents that relate to the Real Property, Improvements, or Appurtenances, including plans, specifications and drawings, and architectural, engineering, and construction contracts, together with all amendments, revisions, modifications and supplements. The foregoing items are jointly and severally called the "Construction Documents" in this instrument.

As used in Paragraphs 1.2.1 through 1.2.12, the term "include", and all variations thereof, are for illustrative purposes only and are always without limitation.

1.3.    This Mortgage shall be deemed to be a security agreement under the Florida Uniform Commercial Code in respect to all personal property and material brought upon the Mortgaged Property to be incorporated in, attached to, or used upon the Mortgaged Property, or as otherwise may be set forth above. Mortgagor hereby grants a security interest to Mortgagee in and to such tangible and intangible personal property and any and all other property described in and by this Mortgage to the full extent permitted by the Florida Uniform Commercial Code. Mortgagor covenants that Mortgagor will do or join with Mortgagee in doing all further things necessary to create, perfect and preserve such security interest. Mortgagor will not suffer or permit any other security interest to exist in respect to such property. The Mortgagee shall have all rights and remedies in respect to such property as is provided in the Florida Uniform Commercial Code. If applicable, all of the terms, provisions and conditions of the Mortgage shall apply to such property prior to and after incorporation in or attachment to the Real Property.

1.4.    Mortgagor warrants that Mortgagor has a good and marketable title to an indefeasible fee estate in the Real Property comprising the Mortgaged Property subject to no lien, charge or encumbrance, except such as Mortgagee has agreed to accept in writing or as set forth in the legal description of the Real Property contained in this Mortgage or in any title insurance policy accepted by Mortgagee in connection with this Mortgage; and Mortgagor covenants that this Mortgage is and will remain a valid and enforceable mortgage on the Mortgaged Property subject only to the exceptions herein provided. Mortgagor has full power and lawful authority to mortgage the Mortgaged Property in the manner and form herein done or intended hereafter to be done. Mortgagor will preserve such title and will forever warrant and defend the same to Mortgagee and will forever warrant and defend the validity and priority of the lien hereof against the claims of all persons and parties whomsoever. Mortgagor represents and warrants that the Real Property is not its homestead or contiguous thereto, that Mortgagor does not reside

OR BK 9816 PG 80

on such property, and that no member of the Mortgagor's family, dependent upon Mortgagor for support, resides on such property.

1.5. Mortgagor will, at the cost of Mortgagor and without expense to Mortgagee, do, execute, acknowledge and deliver all and every such further acts, deeds, conveyances, mortgages, assignments, notices of assignment, transfers and assurances as Mortgagee shall from time to time require in order to preserve the priority of the lien of this Mortgage or to facilitate the performance of the terms hereof.

1.6. If Mortgagor shall pay to Mortgagee the Note together with all other sums advanced by Mortgagee to or on behalf of Mortgagor pursuant to the Note or this Mortgage, as specified in the Note and shall perform all other covenants and conditions of the Note and of this Mortgage, then this Mortgage and the estate hereby created shall cease and terminate.

2. **Payment of Note.** Mortgagor shall pay all sums, including interest, secured hereby, when due, as provided for in the Note and any renewal, extension or modification thereof and in this Mortgage; all such sums to be payable in lawful money of the United States of America at Mortgagee's aforesaid principal office or at such other place as Mortgagee may designate in writing.

3. **Payment of Taxes and Claims.** Mortgagor shall:

3.1. Pay when due and without requiring any notice from Mortgagee, all taxes, assessments of any type or nature, and other charges levied or assessed against the Mortgaged Property or this Mortgage and produce receipts therefor upon demand.

3.2. Pay and discharge any claim, lien or encumbrance against the Mortgaged Property, which may be or become superior to this Mortgage.

3.3. Permit no default or delinquency on any other lien (including any applicable property owner's association liens), encumbrance or charge against the Mortgaged Property.

4. **Escrow.** If required by Mortgagee, Mortgagor shall also make monthly deposits with Mortgagee in a non-interest bearing account, together with and in addition to interest and principal, of a sum equal to one-twelfth of the yearly taxes and assessments which may be levied against the Mortgaged Property, and (if so required) one-twelfth of the yearly premiums for insurance thereon. The amount of such taxes, assessments and premiums, when unknown, shall be estimated by Mortgagee. Such deposits shall be used by Mortgagee to pay such taxes, assessments and premiums when due. Any insufficiency of such account to pay such charges when due shall be paid by Mortgagor to Mortgagee on demand. If, by reason of any default by Mortgagor under any provision of this Mortgage, Mortgagee declares all sums secured hereby to be due and payable, Mortgagee may then apply any funds in such account against the entire indebtedness secured hereby. The enforceability of the covenants relating to taxes, assessments and insurance premiums herein otherwise provided shall not be affected except insofar as those obligations have been met by compliance with this paragraph. Mortgagee may from time to time, at its option, waive, and after any such waiver, reinstate, any or all provisions hereof requiring such deposits by notice to Mortgagor in writing. While any such waiver is in effect, Mortgagor shall pay taxes, assessments and insurance premiums as herein elsewhere provided.

5. **Taxes on Mortgage.** Mortgagor shall promptly pay all taxes and assessments assessed or levied under and by virtue of any state, federal, or municipal law or regulation hereafter passed against Mortgagee upon this Mortgage or the debt hereby secured, or upon its interest under this Mortgage, provided however, that the total amount so paid for any such taxes pursuant to this paragraph, together with the interest payable on such indebtedness shall not exceed the highest lawful rate of interest in Florida and

OR BK 9816 PG 81

provided further that in the event of the passage of any such law or regulation imposing a tax or assessment against Mortgagee upon this Mortgage or the debt secured hereby, that the entire indebtedness secured by this Mortgage shall thereupon become immediately due and payable at the option of Mortgagee.

6. **Insurance.** Mortgagor shall keep the Mortgaged Property insured against loss or damage by fire; and all perils insured against by an extended coverage endorsement; and such other risks and perils as Mortgagee, in its discretion, may require. The policy or policies of such insurance shall be in the form in general use from time to time in the locality in which the Mortgaged Property is situated, shall be in such amount as Mortgagee may reasonably require, shall be issued by a company or companies approved by Mortgagee, and shall contain a standard Mortgagee clause with loss payable to Mortgagee. Whenever required by Mortgagee, such policies shall be delivered immediately to and held by Mortgagee. Insurance proceeds or any part thereof may be applied by Mortgagee at its option, after deducting therefrom all its expenses including attorney's fees: to the reduction of the indebtedness hereby secured; to the restoration or repair of the property damaged; or released to Mortgagor. Mortgagee is hereby authorized, at its option, to settle and compromise any claims, awards, damages, rights of action and proceeds, and any other payment or relief under any insurance policy. Neither the application nor the release of any such amounts shall cure or waive any default. Upon exercise of the power of sale given in this Mortgage or other acquisition of the Mortgaged Property or any part thereof by Mortgagee, such policies shall become the absolute property of Mortgagee.

7. **Written Consent of Mortgagee Required.** Mortgagor shall first obtain the written consent of Mortgagee, such consent to be granted or withheld at the sole discretion of Mortgagee, before:

7.1. Removing or demolishing any building now or hereafter erected on the premises;

7.2. Altering the arrangement, design or structural character thereof;

7.3. Making any repairs which involve the removal of structural parts or the exposure of the interior of such building to the elements;

7.4. Cutting or removing or permitting the cutting and removal of any trees or timber on the Mortgaged Property;

7.5. Removing or exchanging any tangible personal property which is part of the Mortgaged Property;

7.6. Entering into or modifying any leases of the Mortgaged Property; or

7.7. Collecting any rents in advance of the date prescribed in the lease for the payment of such rent.

8. **Maintenance Obligation.** Mortgagor shall maintain the Mortgaged Property in good condition and repair, including but not limited to the making of such repairs as Mortgagee may from time to time determine to be necessary for the preservation of the Mortgaged Property and shall not commit or permit any waste thereof; and Mortgagee shall have the right to inspect the Mortgaged Property on reasonable notice to Mortgagor.

9. **Compliance with Laws.** Mortgagor shall comply with all laws, ordinances, regulations, covenants, conditions and restrictions affecting the Mortgaged Property and shall not to cause or permit any violation thereof or any nuisance.

10. **Mortgagee's Rights to Cure.**

OR BK   9816   PG   82

10.1.   If Mortgagor fails to pay any claim, lien or encumbrance which is superior to this Mortgage; or when due, any tax or assessment or insurance premium; or to keep the Mortgaged Property in repair; or shall commit or permit waste; or there be commenced any action or proceeding affecting the Mortgaged Property or the title thereto; or the interest of Mortgagee therein, including but not limited to eminent domain and bankruptcy or reorganization proceedings, then Mortgagee, at its option, may pay such claim, lien, encumbrance, tax, assessment or premium with right of subrogation thereunder; may make such repairs and take such steps as it deems advisable to prevent or cure such waste; and may appear in any such action or proceeding and retain counsel therein and take such action therein as Mortgagee deems advisable; and for any of such purposes Mortgagee may advance such sums of money, including all costs, reasonable attorney's fees, and other items of expense as it deems necessary. Mortgagee shall be the sole judge of the legality, validity and priority of any such claim, lien, encumbrance, tax, assessment and premium and of the amount necessary to be paid in satisfaction thereof. Mortgagee shall not be held accountable for any delay in making any such payment, which delay may result in any additional interest, costs, charges, expenses or otherwise, or for failure to exercise any option granted hereunder.

10.2.   Mortgagor will pay to Mortgagee, immediately and without demand, all sums of money advanced by Mortgagee to protect the security hereof pursuant to this Mortgage, including all costs, reasonable attorney's fees and other items of expense, together with interest on each such advancement at the highest lawful rate of interest per annum allowed by the law of the State of Florida; and all such sums and interest thereon shall be secured hereby.

11.   **Events of Default.** Each of the following, at Mortgagee's option, shall constitute an Event of Default under this Mortgage:

11.1.   Payment Default. Borrower fails to make, within 15 days of when due: any installment of principal or interest of the Note or any part thereof; any payment; or any other sum secured hereby.

11.2.   Other Defaults. Mortgagor fails to comply with or to perform any other term, obligation, covenant or condition contained in this Mortgage or in any of the Related Documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Mortgagee and Mortgagor, and, unless Mortgagor has violated the same obligation, covenant or condition within the preceding 12 months of the failure, such failure continues for 15 days after written notice thereof from Mortgagee.

11.3.   False Statements. Any warranty, representation or statement made or furnished to Mortgagee by Mortgagor, or on behalf of Mortgagor under this Mortgage, the Note, or the Related Documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

11.4.   Defective Collateralization. This Mortgage or any of the Related Documents ceases to be in full force and effect (including failure of any collateral document to create a valid and perfected security interest or lien) at any time and for any reason.

11.5.   Dissolution or Insolvency. The dissolution or termination of Mortgagor's existence as a going business, the insolvency of Mortgagor, the appointment of a receiver for any part of Mortgagor's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Mortgagor.

OR BK 9816 PG 83

11.6. <u>Creditor or Forfeiture Proceedings</u>. Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Mortgagor or by any governmental agency against any property securing the Note. This includes a garnishment of any of Mortgagor's accounts, including deposit accounts, with Mortgagee. However, this Event of Default shall not apply if there is a good faith dispute by Mortgagor as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Mortgagor gives Mortgagee written notice of the creditor or forfeiture proceeding and deposits with Mortgagee monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Mortgagee, in its sole discretion, as being an adequate reserve or bond for the dispute.

11.7. <u>Breach of Other Agreement</u>. Any breach by Mortgagor under the terms of any other agreement between Mortgagor and Mortgagee that is not remedied within any grace period provided therein, including without limitation any agreement concerning any indebtedness or other obligation of Mortgagor to Mortgagee, whether existing now or later.

11.8. <u>Events Affecting Guarantor</u>. Any of the preceding events occurs with respect to any Guarantor of the Note or any Guarantor dies or becomes incompetent, if an individual, or is dissolved or terminated if a legal entity other than an individual, or revokes or disputes the validity of, or liability under, any Guaranty of the Note.

11.9. <u>Adverse Change</u>. A material adverse change occurs in Mortgagor's financial condition, or Mortgagee believes the prospect of payment or performance of the Note is impaired.

11.10. <u>Change in Ownership</u>. If Mortgagor is a corporation, partnership, limited liability company or other entity, more than twenty-five percent (25%) of the ownership interests in Mortgagor is transferred or newly issued.

11.11. <u>Insecurity</u>. Mortgagee in good faith believes itself insecure.

12. **Remedies Upon Default.** Upon an Event of Default, Mortgagee may pursue one or more of the following remedies:

12.1. Mortgagee may declare the outstanding principal amount of the Note and the interest accrued thereunder, and all other sums secured hereby, to be due and payable immediately. Upon such declaration such principal and interest and other sums shall immediately be due and payable without demand or notice. The indebtedness secured hereby shall bear interest at the highest lawful rate of interest per annum allowed by the law of the State of Florida from and after the date of acceleration.

12.2. If the Note provides for installment payments, the Mortgagee may, at its option, collect a late charge as may be provided for in the Note to reimburse the Mortgagee for expenses in collecting and servicing such installment payments.

12.3. Mortgagee may enforce payment of the Note or the performance of any term hereof or any other right.

12.4. Mortgagee may foreclose this Mortgage and sell, as an entirety or in separate lots or parcels, the Mortgaged Property under the judgment or decree of a court or courts of competent jurisdiction

OR BK 9816 PG 84

12.5. Mortgagee may collect all rents, issues, profits, revenue, income and other benefits from the Mortgaged Property and pursue all remedies available to Mortgagee under the leases assigned to Mortgagee hereunder.

12.6. Mortgagee may pursue any other remedy available to it including, but not limited to, taking possession of the Mortgaged Property without notice or hearing to Mortgagor.

12.7. Mortgagee shall be entitled, as a matter of strict right, without notice and ex parte and without regard to the value or occupancy of the security or the solvency of Mortgagor or the adequacy of the Mortgaged Property as security for the Note, to have a receiver appointed to enter upon and take possession of the Mortgaged Property, collect the rents, issues, profits, revenues, royalties, rights, proceeds, accounts, accounts receivable and benefits therefrom, and apply the same as the court may direct; such receiver to have all the rights and powers permitted under the laws of Florida.

12.8. In any such case set above, Mortgagee or the receiver may also take possession of, and for these purposes use, any and all personal property which is a part of the Mortgaged Property and used by Mortgagor in the rental or leasing thereof or any part thereof. The expense (including receiver's fees, counsel fees, costs and agent's compensation) incurred pursuant to the powers herein contained shall be secured hereby. Mortgagee shall (after payment of all costs and expenses incurred) apply such rents, issues, profits, revenues, royalties, rights, proceeds, accounts, accounts receivable and benefits received by it on the indebtedness secured hereby in such order as Mortgagee determines. The right to enter and take possession of the Mortgaged Property; to manage and operate the same; and to collect the rents, issues, profits, revenues, royalties, rights, proceeds, accounts, accounts receivable and benefits thereof, whether by a receiver or otherwise, shall be cumulative to any other right or remedy hereunder or afforded by law, and may be exercised concurrently therewith or independently thereof. Mortgagee shall be liable to account only for such rents, issues, profits, revenues, royalties, rights, proceeds, accounts, accounts receivable and benefits actually received by Mortgagee.

12.9. Pursue all other remedies available at law or equity.

13. **Non-Exclusive Remedies.**

13.1. No right, power or remedy conferred upon or reserved to Mortgagee by the Note, this Mortgage or any other instrument securing the Note is exclusive of any other right, power or remedy, but each and every such right, power and remedy shall be cumulative and concurrent and shall be in addition to any other right, power and remedy given hereunder or under the Note or any other instrument securing the Note, now or hereafter existing at law, in equity or by statute.

13.2. If the indebtedness secured hereby is now or hereafter further secured by chattel mortgages, security interests, financing statements, pledges, contracts of guaranty, assignments of leases, or other securities; or if the Mortgaged Property hereby encumbered consists of more than one parcel of real property, Mortgagee may, at its option, exhaust any one or more of such securities and security hereunder or such parcels of the security hereunder, either concurrently or independently, and in such order as it may determine.

14. **Future Advances.** This Mortgage shall secure not only existing indebtedness, but also such future advances, whether such advances are obligatory or to be made at the option of Mortgagee, or otherwise, as are made within twenty (20) years from the date hereof, to the same extent as if such future advances were made on the date of the execution of this Mortgage, but such secured indebtedness shall not exceed at any time the maximum principal amount of two times the amount of the Note, plus interest thereon,

OR BK  9816  PG  85

plus any disbursements made for the payment of taxes, levies, or insurance on the Mortgaged Property, plus interest on such disbursements. Any such future advances, whether obligatory or to be made at the option of the Mortgagee, or otherwise, may be made either prior to or after the due date of the Note or any other notes secured by this Mortgage. This Mortgage is given for the specific purpose of securing any and all indebtedness by the Mortgagor to Mortgagee (but in no event shall the secured indebtedness exceed at any time the maximum principal amount set forth in this paragraph) in whatever manner this indebtedness may be evidenced or represented until this Mortgage is satisfied of record. All covenants and agreements contained in this Mortgage shall be applicable to all further advances made by Mortgagee to Mortgagor under this future advance clause.

15.    **No Waiver.** No delay by Mortgagee in exercising any right or remedy hereunder, or otherwise afforded by law, shall operate as a waiver thereof or preclude the exercise thereof during the continuance of any default hereunder. No waiver by Mortgagee of any default shall constitute a waiver of or consent to subsequent defaults. No failure of Mortgagee to exercise any option herein given to accelerate maturity of the debt hereby secured, no forbearance by Mortgagee before or after the exercise of such option, and no withdrawal or abandonment of foreclosure proceeding by Mortgagee shall be taken or construed as a waiver of its right to exercise such option or to accelerate the maturity of the debt hereby secured by reason of any past, present or future default on the part of Mortgagor; and, in like manner, the procurement of insurance or the payment of taxes or other liens or charges by Mortgagee shall not be taken or construed as a waiver of its right to accelerate the maturity of the debt hereby secured.

16.    **No Release of Mortgagor.**

16.1.    Without affecting the liability of Mortgagor or any other person (except any person expressly released in writing) for payment of any indebtedness secured hereby or for performance of any obligation contained herein, and without affecting the rights of Mortgagee with respect to any security not expressly released in writing, Mortgagee may, at any time and from time to time, either before or after the maturity of such note, and without notice or consent:

16.1.1. Release any person liable for payment of all or any part of the indebtedness or for performance of any obligation;

16.1.2. Make any agreement extending the time or otherwise altering the terms of payment of all or any part of the indebtedness, or modifying or waiving any obligation, or subordinating, modifying or otherwise dealing with the lien or charge hereof;

16.1.3. Exercise or refrain from exercising or waive any right Mortgagee may have;

16.1.4. Accept additional security of any kind; and

16.1.5. Release or otherwise deal with any property, real or personal, securing the indebtedness, including all or any part of the Mortgaged Property.

16.2.    Any agreement hereafter made by Mortgagor and Mortgagee pursuant to this Mortgage shall be superior to the rights of the holder of any intervening lien or encumbrance.

17.    **Condemnation.** In the event of condemnation proceedings of the Mortgaged Property, the award or compensation payable thereunder is hereby assigned to and shall be paid to Mortgagee. Mortgagee shall be under no obligation to question the amount of any such award or compensation and may accept the same in the amount in which the same shall be paid. In any such condemnation proceedings, Mortgagee may be represented by counsel selected by Mortgagee. The proceeds of any award or compensation so received shall, at the option of Mortgagee, either be applied to the prepayment of the Note and at the

OR BK  9816  PG  86

rate of interest provided therein, regardless of the rate of interest payable on the award by the condemning authority; or at the option of Mortgagee, such award shall be paid over to Mortgagor for restoration of the Mortgaged Property.

18. **Financial Statements.** At the option of Mortgagee, Mortgagor and Borrower shall provide Mortgagee with periodic certified financial statements of the operations of and the financial condition of Mortgagor.

19. **Due on Sale.** The loan represented by this Mortgage and the Note is personal to the Mortgagor and the Mortgagee made the loan to the Mortgagor based upon the credit of the Mortgagor and the Mortgagee's judgment of the ability of the Mortgagor to repay all sums due under this Mortgage, and therefore this Mortgage may not be assumed by any subsequent holder of an interest in the Mortgaged Property. If all or any part of the Mortgaged Property or any interest therein is sold, conveyed, transferred (including a transfer by agreement for deed or land contract), or further encumbered by Mortgagor without Mortgagee's prior written consent (excluding: (a) the grant of any leasehold interest in the Mortgaged Property not containing an option to purchase, which lease is made in the ordinary course of Mortgagor's business), Mortgagee may declare all sums secured by this Mortgage immediately due and payable.

20. **Entity Status.** Mortgagor represents and warrants that: (a) if a corporation, limited liability company or other legal entity, it is duly organized and validly existing, in good standing under the laws of the state of its formation, has stock, membership interests or other ownership interest outstanding which has been duly and validly issued, and is qualified to do business and is in good standing in the state of Florida, with full power and authority to consummate the loan contemplated hereby; and (b) if a partnership, it is duly formed and validly existing, and is fully qualified to do business in the state of Florida, with full power and authority to consummate the loan contemplated hereby.

21. **Compliance With Environmental Laws:**

21.1. Definitions.

21.1.1. "Environmental Laws" mean any and all state, federal and local statutes, regulations and ordinances relating to the protection of human health or the environment, including without limitation the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. Section 9601, et seq. ("CERCLA"), the Superfund Amendments and Reauthorization Act of 1986, Pub. L. No.99-499 ("SARA"), the Hazardous Materials Transportation Act, 49 U.S.C. Section 1801, et seq., the Resource Conservation and Recovery Act, 42 U.S.C. Section 6901, et seq., or other applicable state or federal laws, rules, or regulations adopted pursuant thereto, or any amendments thereto.

21.1.2. "Hazardous Substances" shall mean and include materials that, because of their quantity, concentration or physical chemical or infectious characteristics, may cause or pose a present or potential hazard to human health or the environment when improperly used, treated, stored, disposed of, generated, manufactured, transported or otherwise handled. The words "Hazardous Substances" are used in their very broadest sense and include without limitation any and all hazardous or toxic substances, materials or waste as defined by or listed under the Environmental Laws. The term "Hazardous Substances" also includes, without limitation, petroleum and petroleum by-products or any fraction thereof and asbestos.

21.2. Representations and Warranties: Mortgagor specifically represents and warrants that:

OR BK  9816  PG  87

21.2.1. The use and operation of the Mortgaged Property complies with all applicable Environmental Laws and Mortgagor shall continue to comply therewith at all times.

21.2.2. Specifically, and without limiting the generality of the foregoing, there are not now and there shall not in the future be any Hazardous Substances located or stored in, upon or at the Mortgaged Property, and there are not now nor shall there be at any time any releases or discharges of Hazardous Substances from the Mortgaged Property.

21.2.3. During the period of Mortgagor's ownership of the Mortgaged Property, there has been no use, generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance by any person on, under, about or from the Mortgaged Property

21.2.4. Mortgagor has no knowledge of, or reason to believe that there has been, except as previously disclosed to and acknowledged by Mortgagee in writing, (a) any breach or violation of any Environmental Laws; (b) any use, generation, manufacture, storage, treatment, disposal, release, or threatened release of any Hazardous Substance on, under, about or from the Mortgaged Property by any prior owners or occupants of the Mortgaged Property; or (c) any actual or threatened litigation or claims of any kind by any person relating to such matters; and

21.2.5. Except as previously disclosed to and acknowledged by Mortgagee in writing, (a) neither Mortgagor nor any tenant, contractor, agent or other authorized user of the Mortgaged Property shall use, generate, manufacture, store, treat, dispose of, or release any Hazardous Substance on, under, about or from the Mortgaged Property; and (b) any such activity shall be conducted in compliance with all applicable federal, state, and local laws, regulations and ordinances, including without limitation all Environmental Laws.

21.3. Indemnification:

21.3.1. Mortgagor shall indemnify Mortgagee and hold Mortgagee harmless from and against any and all losses, liabilities (including strict liability), damages, injuries, expenses (including attorneys' fees for attorneys of Mortgagee's choice), costs of any settlement or judgment, and claims of any and every kind whatsoever paid, incurred or suffered by, or asserted against, Mortgagee by any person or entity or governmental agency for, with respect to, or as a direct or indirect result of, the presence on or under, or the escape, seepage, leakage, spillage, discharge, emission or release from the Mortgaged Property of any Hazardous Substances, regardless of whether within Mortgagor's control. The indemnification agreement set forth in this paragraph includes, without limitation, any losses, liabilities (including strict liability), damages, injuries, expenses (including attorneys' fees for attorneys of Mortgagee's choice), costs of any settlement or judgment or claims asserted or arising under the Comprehensive Environmental Response, Compensation and Liability Act, any federal, state or local "Superfund" or "Superlien" laws, and any and all other statutes, laws, ordinances, codes, rules, regulations, orders or decrees regulating, with respect to or imposing liability, including strict liability, substances or standards of conduct concerning any Hazardous Substances.

21.3.2. The indemnification and hold harmless agreement set forth in this subparagraph shall benefit Mortgagee from the date hereof and shall continue notwithstanding payment of 61-XXCA-BC release or discharge of this Mortgage or the obligations secured hereby, and, without

OR BK 9816 PG 88

limiting the generality of the foregoing, such obligations shall continue for the benefit of Mortgagee during and following any possession or ownership of the Mortgaged Property by Mortgagee, whether arising by foreclosure or deed in lieu of foreclosure or otherwise, such indemnification and hold harmless agreement to continue forever.

21.4.   Notice of Environmental Complaint: If Mortgagor shall receive any knowledge of notice (actual or constructive) of any of the following (an "Environmental Complaint") from any person or entity, then Mortgagor immediately shall notify Mortgagee orally and in writing:

21.4.1.   The happening of any event involving the spill, release, leak, seepage, discharge, presence or cleanup of any Hazardous Substances on the Land or in connection with Mortgagor's operations thereon; or

21.4.2.   Any complaint, order, citation or notice with regard to air emissions, water discharges; or

21.4.3.   Any other environmental, health or safety matters affecting Mortgagor.

21.5.   Mortgagee's Reserved Rights: In the event of an Environmental Complaint, Mortgagee shall have the right, but not the obligation (and without limitation of Mortgagee's rights under this Mortgage) to enter onto the Mortgaged Property or to take such other actions as it shall deem necessary or advisable to clean up, remove, resolve or minimize the impact of, or otherwise deal with, any such Hazardous Substances or Environmental Complaint. All reasonable costs and expenses, including a reasonable attorney's fee, incurred by Mortgagee in the exercise of any such rights shall be secured by this Mortgage; shall be payable by Mortgagor upon demand; and shall accrue interest at the highest lawful rate from the date paid by Mortgagee.

21.6.   Environmental Audits: If Mortgagee shall have reason to believe that Hazardous Substances has been discharged on the Mortgaged Property, Mortgagee shall have the right, in its sole discretion, to require Mortgagor to perform periodically to Mortgagee's satisfaction (but not more frequently than annually unless an Environmental Complaint shall be then outstanding), at Mortgagor's expense, an environmental audit and, if deemed necessary by Mortgagee, an environmental risk assessment of:

21.6.1.   The Mortgaged Property;

21.6.2.   Hazardous Substances management practices; and

21.6.3.   Hazardous Substances disposal sites used by Mortgagor.

21.7.   Any environmental audit or risk assessment must be by an environmental consultant satisfactory to Mortgagee. Should Mortgagor fail to perform any such environmental audit or risk assessment within thirty (30) days after Mortgagee's request, Mortgagee shall have the right to retain an environmental consultant to perform such environmental audit or risk assessment. All costs and expenses, including a reasonable attorney's fee, incurred by Mortgagee in the exercise of such rights shall be secured by this Mortgage; shall be payable by Mortgagor upon demand; and shall accrue interest at the highest lawful rate from the date paid by Mortgagee.

21.8.   Breach: Any breach of any warranty, representation or agreement contained in this Section shall be an Event of Default and shall entitle Mortgagee to exercise any and all remedies provided in this instrument, or otherwise permitted by law.

OR BK   9816   PG   89

22.   **Cross-Collateralization.** In addition to the Note, this Mortgage secures all obligations, debts and liabilities, plus interest thereon, of Mortgagor to Mortgagee, or anyone or more of them, as well as all claims by Mortgagee against Mortgagor or anyone or more of them, whether now existing or hereafter arising, whether related or unrelated to the purpose of the Note, whether voluntary or otherwise, whether due or not due, direct or indirect, absolute or contingent, liquidated or unliquidated and whether Mortgagor may be liable individually or jointly with others, whether obligated as guarantor, surety, accommodation party, or otherwise, and whether recovery upon such amounts may be or hereafter may become barred by any statute of limitations, and whether the obligation to repay such amounts may be or hereafter may become otherwise unenforceable.

23.   **Other Loan Documents.** In connection with this Mortgage, Mortgagor has executed other loan documents in favor of Mortgagee. These loan documents may include, but are not limited to, loan agreements, construction loan agreements, security agreements, loan closing agreements and a waiver of jury trials. Reference is made to all of the loan documents for additional rights of Mortgagee and additional duties and obligations of Mortgagor. Any default by Mortgagor under the terms of any of the loan documents shall constitute a default of this Mortgage and all of the other loan documents and shall entitle Mortgagee to accelerate the principal balance due on the Note and to pursue any and all remedies provided by any of the loan documents.

24.   **Attorney's Fees.** If any legal action or other proceeding (including, without limitation, appeals or bankruptcy proceedings) whether at law or in equity, which: arises out of, concerns, or relates to this Mortgage, any and all transactions contemplated hereunder, the performance hereof, or the relationship created hereby, or is brought for the enforcement of this Mortgage, or because of an alleged dispute, breach, default or misrepresentation in connection with any provisions of this Mortgage, the successful or prevailing party or parties shall be entitled to recover reasonable attorney's fees, court costs and all expenses even if not taxable as court costs, incurred in that action or proceeding, in addition to any other relief to which such party or parties may be entitled.

25.   **Miscellaneous.**

   25.1.   Severability. In the event any one or more of the provisions contained in this Mortgage or in the Note shall for any reason be held to be invalid, illegal or unenforceable in any respect, such invalidity, illegality or unenforceability shall, at the option of the Mortgagee, not affect any other provisions of this Mortgage, but this Mortgage shall be construed as if such invalid, illegal or unenforceable provision had never been contained herein or therein.

   25.2.   Maximum Interest. The total interest payable pursuant to the Note or this Mortgage shall not in any one year exceed the highest lawful rate of interest permitted in the state of Florida.

   25.3.   Reappraisal Agreement. Notwithstanding any term or provision hereof to the contrary, if at any time Mortgagee reasonably determines that the value of the Property may have declined or be less than Mortgagee previously anticipated, within sixty (60) days from Mortgagee's written request to Mortgagor therefore, Mortgagor shall provide to Mortgagee, at Mortgagor's sole cost and expense, a current appraisal of the Mortgaged Property to be ordered by Mortgagee from an appraiser designated by Mortgagee and in form and content as required by Mortgagee. Mortgagor shall cooperate fully with any such appraiser and provide all such documents and information as such appraiser may request in connection with such appraiser's performance and preparation of such appraisal. Mortgagor's failure to promptly and fully comply with Mortgagee's requirements under this paragraph shall, without further notice, constitute an Event of Default under this Mortgage and the Note. Nothing contained herein, however, shall entitle Mortgagee to require reappraisal of the Property if Mortgagee has required such a reappraisal within the previous two (2) years.

05-2025-CA-027661-XXCA-BC

OR BK 9816 PG 90

25.4. <u>Successors and Assigns.</u> The covenants and agreements herein contained shall bind; and the benefits and advantages shall inure to the respective heirs, executors, administrators, successors and assigns of the parties hereto.

25.5. <u>References.</u> Wherever used, the singular number shall include the plural, the plural the singular, and the use of any gender shall be applicable to all genders. All covenants, agreements and undertakings shall be joint and several.

25.6. <u>Entire Understanding.</u> This agreement and the other documents executed by the parties in connection with the Note secured hereby represent the entire understanding and agreement between the parties with respect to the subject matter hereof, and supersedes all other negotiations (if any) made by and between the parties.

25.7. <u>Amendments.</u> The provisions of this agreement may not be amended, supplemented, waived, or changed orally but only by a writing making specific reference to this agreement signed by the party as to whom enforcement of any such amendment, supplement, waiver or modification is sought.

THIS IS A BALLOON MORTGAGE AND THE FINAL PAYMENT, OR THE BALANCE DUE UPON MATURITY, IS APPROXIMATELY $659,883.63, TOGETHER WITH ALL ACCRUED INTEREST, IF ANY, AND ALL ADVANCEMNTS MADE BY THE MORTGAGEE UNDER THE TERMS OF THE MORTGAGE

*{Signature pages follow}*

OR BK  9816  PG  91

IN WITNESS WHEREOF, Mortgagor has duly executed this Mortgage as of the date first above written.

**MORTGAGOR**

HOMEMAKERS REAL ESTATE, LLC,
a Florida limited liability company

By: _____
Horton S. Johnson, Manager

Witness#1 Signature

Jenelle Morea
Witness#1 Printed Name

Witness #2 Signature

David Ruiz
Witness #2 Printed Name

STATE OF FLORIDA

COUNTY OF Orange

The foregoing instrument was acknowledged before me by means of _X_ physical presence or __ online notarization, this 12th day of June, 2023 by Horton S. Johnson, Manager of HOMEMAKERS REAL ESTATE, LLC, a Florida limited liability, on its behalf, who is (a) _____ personally known to me or (b) _____ produced their driver's licenses as identification.

Notary stamp or seal

_____
Notary Public

Janelle Morea
Notary Public
State of Florida
Comm# HH077342
Expires 1/5/2025

OR BK  9816  PG  92

EXHIBIT "A"

Parcel 1:

Building #5 Unit 101

A parcel of land lying in Section 11, Township 24 South, Range 36 East, Tallahassee Base Meridian, Brevard County, Florida, being a part of the lands as described in Official Records Book 6890, Page 2520, Public Records of Brevard County, Florida, and being more particularly described as follows:

Commence at the intersection of the Westerly right-of-way line of North Courtenay Parkway and the South Property Line of The Canaveral Port Authority (described as the Point-of-Beginning in Official Records Book 6212, Page 2393, aforesaid Public Records); thence South 79 degrees 58 minutes 00 seconds West, along the South Line of the Canaveral Port Authority, a distance of 172.97 feet to a point; thence continuing along said South property line South 82 degrees 14 minutes 00 seconds West, a distance of 289.71 feet; thence South 07 degrees 46 minutes 00 seconds East, perpendicular to said South line of the Canaveral Port Authority, a distance of 148.30 feet to the POINT-OF-BEGINNING; thence continue South 07 degrees 46 minutes 00 seconds East, a distance of 52.67 feet; thence South 82 degrees 14 minutes 00 seconds West, a distance of 21.00 feet; thence North 07 degrees 46 minutes 00 seconds West, a distance of 70.00 feet; thence North 82 degrees 14 minutes 00 seconds East a distance of 12.33 feet; thence South 07 degrees 46 minutes 00 seconds East, a distance of 17.33 feet; thence North 82 degrees 14 minutes 00 seconds East a distance of 8.67 feet to the POINT-OF-BEGINNING.

Parcel 2:

Building #5 Unit 103

A parcel of land lying in Section 11, Township 24 South, Range 36 East, Tallahassee Base Meridian, Brevard County, Florida, being a part of the lands as described in Official Records Book 6890, Page 2520, Public Records of Brevard County, Florida, and being more particularly described as follows:

Commence at the intersection of the Westerly right-of-way line of North Courtenay Parkway and the South Property Line of The Canaveral Port Authority (described as the Point-of-Beginning in Official Records Book 6212, Page 2393, aforesaid Public Records); thence South 79 degrees 58 minutes 00 seconds West, along the South Line of the Canaveral Port Authority, a distance of 172.97 feet to a point; thence continuing along said South property line South 82 degrees 14 minutes 00 seconds West, a distance of 331.38 feet; thence South 07 degrees 46 minutes 00 seconds East, perpendicular to said South line of the Canaveral Port Authority, a distance of 148.30 feet to the POINT-OF-BEGINNING; thence continue South 07 degrees 46 minutes 00 seconds East, a distance of 52.67 feet; thence South 82 degrees 14 minutes 00 seconds West, a distance of 20.67 feet; thence North 07 degrees 46 minutes 00 seconds West, a distance of 70.00 feet; thence North 82 degrees 14 minutes 00 seconds East a distance of 12.33 feet; thence South 07 degrees 46 minutes 00 seconds East, a distance of 17.33 feet; thence North 82 degrees 14 minutes 00 seconds East a distance of 8.33 feet to the POINT-OF-BEGINNING.